### IN THE

# SUPREME COURT OF TENNESSEE

### FOR THE

## MIDDLE DIVISION

## NASHVILLE, DECEMBER TERM, 1920.

### JOHN LANCASTER *v*. THE STATE.

### (*Nashville.* December Term, 1920.)

1. **INDICTMENT AND INFORMATION.** Defendant indicted for murder may be convicted of assault with intent to commit manslaughter.

In view of Shannon's Code, section 7195, providing that upon indictment for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged, but guilty of any inferior degree or of an attempt to commit the offense or of any offense necessarily included in the one charged where defendant was charged with murder in the first degree, he is not entitled to have a motion in arrest of judgment sustained because convicted and sentenced for assault with intent to commit voluntary manslaughter. (*Post, pp.* 24-27.)

Cases cited and distinguished: Thomas v. State, 125 Ala., 45; State v. Parker, 66 Iowa, 586.

Code cited and construed: Sec. 5222 (1858); Sec. 7195, (S); Sec. 5306 (1896).

2. HOMICIDE. Evidence held to sustain a conviction of assault to commit voluntary manslaughter.

In a prosecution for murder in the first degree, evidence *held* to present a question for the jury and to sustain a verdict convicting of an assault with an intent to commit voluntary manslaughter where defendant struck deceased with an iron bar. (*Post, pp.* 27-31.)

3. HOMICIDE. Evidence held not to support plea to self-defense.

Upon an appeal from a conviction of assault with intent to commit voluntary manslaughter, evidence *held* not to preponderate against the verdict and in favor of the defendant's plea of self-defense. (*Pots, p.* 31.)

---

### FROM MAURY.

---

APPEAL from the Circuit Court of Maury County.—HON. W. B. TURNER, Judge.

E. W. CARMACK, JR., for appellant.

WM. H. SWIGGART, JR., Assistant Attorney-General, for the State.

MR. JUSTICE HALL delivered the opinion of the Court.

The defendant, John Lancaster, was indicted in the circuit court of Maury county on the charge of murder in the first degree. The indictment (omitting the formal parts of it) is in words as follows:

"John Lancaster . . . unlawfully, feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought did make an assault and battery upon the body of one Robert N. Blackburn (col.) with a certain dangerous and deadly weapon, to wit, an iron rod, and him, the said

Lancaster v. State.

Robert N. Blackburn, he, the said John Lancaster, then and there did unlawfully feloniously, willfully, deliberately, premeditatedly, and of his malice aforethought kill and murder, against the peace and dignity of the State."

Defendant was tried upon said indictment and his plea of not guilty at the November term of said court, 1920, before Hon. G. T. Hughes, Jr., special judge, and a jury. The jury, after hearing the evidence and receiving the charge of the court, returned the following verdict:

"The jurors aforesaid upon their oaths aforesaid say, We the jury find the defendant, John Lancaster, guilty of an assault with intent to commit voluntary manslaughter."

Defendant thereupon moved the court to be discharged from custody on the ground that the indictment charged him with murder in the first degree, of which he had been acquitted by the jury, but had been found guilty of an offense not embraced in the indictment.

This motion was overruled by the court. Whereupon defendant made a motion for a new trial upon the following grounds:

First. Because the evidence preponderates against the verdict and in favor of the innocence of the defendant.

Second. Because the indictment charged the defendant with murder in the first degree, and the jury found him guilty of an assault with intent to commit voluntary manslaughter, an offense not embraced in the indictment.

This motion was likewise overruled by the court.

Thereupon the defendant moved the court in arrest of judgment upon the ground that the verdict was void, because the indictment for murder did not support a verdict for an assault with intent to commit voluntary manslaughter.

This motion was also overruled by the court, and the defendant was sentenced to the penitentiary of the State for an indeterminate term of from one to five years.

From the judgment of the court the defendant has appealed to this court and has assigned errors.

By the first assignment of error it is insisted that the trial judge erred in overruling defendant's motion in arrest of judgment.

This assignment is based on the contention that defendant was acquitted of all the offenses embraced in the indictment, but was convicted of an offense not embraced in the indictment, and therefore the verdict of the jury and the judgment based thereon are void, and the defendant is entitled to be discharged.

By section 5222 of the Code of 1858 (Shannon's Annotated Code, section 7195) it is provided as follows:

"Upon an indictment for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto, or of an attempt to commit the offense; and the defendant may also be found guilty of any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor."

The foregoing statute is very broad and comprehensive in its terms, and authorizes the conviction of the accused of any offense which is embraced in that charged in the indictment. This section of the Code was taken from the Alabama Code.

Section 5306 of Alabama Code 1896 provides that one indicted for a criminal offense may under that indictment be convicted of an attempt to commit the offense charged, and it also provides that he may be "found guilty of any offense which is necessarily included in that with which he is charged."

In *Thomas* v. *State*, 125 Ala., 45, 27 South., 920, this statute was construed, and it was held that an assault with intent to murder was necessarily included in a murder committed in the manner charged by the indictment, which was "that the defendant unlawfully and with malice aforethought killed Walter Hudson by striking him with a joint of iron pipe or with a piece of iron pipe."

Thomas was tried under this indictment for murder. There was evidence tending to show that Hudson did not die as the result of the blow inflicted upon him by Thomas, but died as the result of an injury sustained later by a heavy chain falling on his head.

Thomas excepted to that portion of the trial court's charge to the jury as follows:

"That if they had a reasonable doubt as to whether the blow alleged to have been inflicted by the defendant with a piece of iron pipe or a joint of iron pipe caused the death of the deceased, or proximately contributed to his death,

they might convict the defendant of an assault with intent to murder, if they were satisfied from the evidence beyond a reasonable doubt that the defendant assaulted the deceased with a piece of iron pipe or with a joint of iron pipe unlawfully, maliciously, and within the intent to murder the deceased, provided they found the weapon used was, in the manner used, calculated to produce death."

The court held that there was no error in the charge, and that the conviction was proper.

To the same effect is the holding of the court in *State v. Parker,* 66 Iowa, 586, 24 N. W., 225. In that case Parker was indicted for murder in the first degree. Upon the trial he "was convicted of an assault with intent to do a great bodily injury." It was contended that the verdict was not authorized by law. The Code provision cited by the court in the opinion was identical with the concluding clause of section 7195 of Shannon's Annotated Code, which has been hereinbefore quoted, providing that—

"The defendant may be found guilty of any offense the commission of which is necessarily included in that with which he is charged in the indictment."

In sustaining the conviction, the Supreme Court of Iowa said:

"It cannot be doubted that an assault is included in the crime of murder. Usually an indictment in express words charges an assault with felonious intent. Of necessity, an assault must have been literally committed in all cases of murder by direct violence. The intent with which the as-

sault is committed relates to its character and indicates its degree. It is discovered, not in the extent or nature of the violence, but in the *animus* of the perpetrator. It follows that an assault, whether with an intent to murder, to maim, or to inflict a great bodily injury, is included in the crime of murder. It is the settled doctrine of the law in this State that an assault is included in the crime of murder; the intent with which the assault is committed does not exclude it."

We are of the opinion that the motion in arrest was properly overruled.

Now, as to the defendant's second assignment of error, which challenges the sufficiency of the evidence to support the verdict of the jury, we think this assignment is also not well grounded.

The defendant admits striking the deceased on the head with an iron bar, which was exhibited to the jury, but he insists that he did this in his own necessary self-defense, and at a time when he was in imminent danger of death or great bodily harm from the deceased.

The evidence shows that the defendant and the deceased, Robert N. Blackburn, were boarders at the home of Mollie Brock, where the assault occurred. There had been a quarrel between them on the night before the assault, in which the deceased had denounced the defendant as a "liar." A difficulty between them was averted at that time by the intervention of Mollie Brock. The assault was committed by the defendant upon the deceased on the following afternoon in the northeast room of the three-

room cottage, in which, in addition to the deceased, there were two children, the older of whom was M. A. Webster, a girl fourteen years of age.

The defendant testified that he asked M. A. Webster to help him carry a tub of water from just outside the door into one of the rooms of the cottage; this the Webster girl refused to do because she said the tub was too heavy for her, and suggested that, perhaps, the deceased would assist the defendant. The defendant's testimony as to what then happened is as follows:

"I was standing on the ground right at the door which was open. Blackburn was sitting in a chair with his side to me. He said, 'I ain't going to help him do anything; I'm going to kill him.' Blackburn had on overalls with a long pocket in front. When he said he was going to kill me he put his hand in his pocket and stretched out his leg so as his hand could get down into it. I didn't know what he had in there, but it looked to me like something more than his fist. I saw a piece of iron a step or two away from me. I grabbed it up. Blackburn began turning toward me in his chair with his hand still in his pocket and said, 'Come on in and die.' He was about seven or eight feet from me. I ran in on him and hit him just as he was rising from his chair. He fell on the floor, and I dropped the iron piece and went over where my brother was working. I never saw Blackburn again. I didn't aim to kill; I didn't hit him hard."

It will be noted that the defendant places himself outside of the house in front of an open door which led into

the room, and that the deceased was at that time sitting in a chair with his side towards the defendant.

The Webster girl testified that at the time of the assault she was engaged in ironing in an adjoining room; that there was a door between the room she was in and the one in which the defendant and the deceased were. She says that this door was open, and that she noticed the deceased sitting in a chair about the middle of the room shortly before the assault. She says that she could not see the defendant at that time from where she was and did not know just where he was located in the room. She says that she left the room that she was in and went into the kitchen, which was just in the rear of the room in which she was doing her ironing; that she was only gone in the kitchen a few minutes when she came back and resumed her ironing, and had turned to pick up another iron when she saw the defendant strike the deceased on the head with an iron bar. She says the deceased was sitting in the chair when he was struck, and fell from the chair on to the floor. The deceased was rendered unconscious by the blow and remained so for about twenty minutes. There is no evidence that he had a weapon of any kind about his person. The Webster girl testified that she heard no conversation or words between the defendant and the deceased previous to the assault, though she was in an adjoining room.

Another witness by the name of Boys Kinnard, who was introduced on behalf of the State, testified that he was at the house of Mollie Brock at the time of the assault upon the deceased. This witness says that just prior to the as-

sault he met the defendant outside of the house; that he (Kinnard) had a headache and had his head tied up; that the defendant asked him what was the matter with his head, after which the defendant proceeded towards the northeast room, where the deceased was, and he (witness) went on into the southwest room of the Brock cottage, and that after a few minutes he heard the sound of what appeared to be two blows or licks, which came from the room adjoining the one he was in; that the sounds which he heard were about two seconds apart. Kinnard says he started into the room, which had been entered by the defendant, and met the defendant coming out. Witness says he saw the defendant drop a piece of iron, and upon entering the room he found the deceased lying on the floor unconscious.

A subsequent examination showed that there was a wound on the right side of deceased's head just above the ear, which was dressed and sewed up shortly afterwards. Deceased recovered consciousness and lived ten days after the injury. The evidence shows that he had been afflicted with diabetes for about three years prior to his injury. There was evidence tending to show that he did not die as a result of the injury received at the hands of the defendant, but died as a result of a diabetic *coma*.

We are of the opinion that the case was one peculiarly for the jury, in view of the testimony of the witnesses Webster and Kinnard. The Webster girl testified that the deceased was sitting in a chair at the time he was struck by the defendant. Neither of these witnesses heard any words

Lancaster v. State.

spoken between defendant and deceased prior to the assault, though the evidence shows that both were in an adjoining room with the door open, and could have heard a quarrel between the defendant and the deceased if one had occurred. The weight of the evidence would indicate that the defendant was smarting under the epithet that the deceased had applied to him on the night before, and struck the deceased with the iron bar, which he had secured outside of the house, while the deceased was sitting in the chair in the room.

We do not feel that we would be justified in reversing the judgment on the facts. We do not think that it can be said that the evidence preponderates against the verdict and in favor of the defendant's plea of self-defense. The judgment will therefore be affirmed.