BATEY *v.* STATE.

*(Nashville,* December Term, 1950.)

Opinion filed January 13, 1951.

Solon Fitzpatrick, of Carthage, for plaintiff in error.

Knox Bigham, Asst. Atty. Gen., for the State.

594

MR. JUSTICE BURNETT delivered the opinion of Court.

The plaintiff in error was convicted of manufacturing intoxicating liquors, with punishment fixed at a fine of $250.00 and a ninety day jail sentence, from which he appeals.

The indictment is laid in two counts, the first charges a violation of Code Section 11246 which makes it a misdemeanor "to manufacture or attempt to manufacture any intoxicating whiskey or brandy" and the second count is based upon Code Section 11248 which makes it a misdemeanor for the assembling of apparatus for the purpose of manufacturing whiskey and brandy.

The case was first tried in April, 1950, when the plaintiff in error plead not guilty and after hearing the proof, the jury was unable to agree and a mistrial was declared. The case then came on to be tried the second time in July, 1950, when the plaintiff in error then moved to quash the indictment which motion was overruled and then he again entered his plea of not guilty. The proof was heard, the jury charged and it was on this second trial that the plaintiff in error was found guilty from which this appeal comes. There was no motion made by the plaintiff in error at this second trial to withdraw the plea of not guilty that he had formerly made at the preceding trial.

The record shows that on December 4, 1949, four officers raided a still in Smith County. The still was located beside a rock fence which was about as high as a man's shoulders. These officers, prior to going to this still, had been informed of its whereabouts and shown its location by a man by the name of Owens and as a result of this information they had secured a search warrant prior to making the raid. The officers divided themselves into two groups and approached the location of the still from opposite directions. When they arrived in close proximity to the still, two of the officers being about 30 or 40 feet away, they saw the plaintiff in error stooped over doing something about the still. Just in almost a second he raised up and saw the officers and then ran. He ran in the direction of the other two officers who were within 75 or 80 feet of him. All four officers testify that the plaintiff in error was the man they saw at the still. Two of these officers had known the plaintiff in error prior to this time and positively identify him as the man whom they saw at the still.

These officers found at the still a 75 gallon copper still pot, two 50 gallon mash barrels, 100 pounds of sugar, and some fire, branding iron, etc. One or more of the officers were asked if this beer or mash that they found in these barrels was "for the purpose of making whiskey?" The answer without equivocation, was that it was for this purpose.

As heretofore said the man at the still who has been identified by the four officers as the plaintiff in error, ran up a ravine and escaped arrest at the time. The officers not being able to catch the man who ran from the still, went by the home of the plaintiff in error and he was not there. They left word with his wife for him to come into the court house. On the following day the

plaintiff in error reported to the sheriff at the court house and was then placed under arrest.

In addition to the four officers definitely identifying the plaintiff in error as the man whom they saw at the still, another witness, a man by the name of Owens, says that he saw the plaintiff in error hauling a still on a wagon belonging to Owens a few days prior to the raid and that he had told the sheriff that the plaintiff in error had this still there. This man Owens also says that he saw the plaintiff in error at the location of the still a few days before and saw him stooping over one of the barrels with the cover off and doing something about it.

The plaintiff in error takes the stand in his own behalf and denies that he was the party who was at the still or that he knew anything about the still. He is supported in this fact by one or two of his neighbors who testify that all during this afternoon on which this raid was made that the plaintiff in error was at their home. He is also supported in this by his wife. He denies that he had on the kind of clothes that the officers described, his wife likewise supports him in this fact. Of course in cross-examination of these various alibi witnesses the alibi is somewhat weakened by showing discrepancies in their testimony.

One insistence is that the evidence preponderates against the verdict. We in our discussion of this feature of the case bear in mind the well established rule that here the presumption of innocence vanishes and a presumption of guilt attaches. The burden here is on the plaintiff in error to show that the evidence preponderates against the verdict. *Hale* v. *State,* 179 Tenn. 201, 164 S. W. (2d) 822; *Mahon* v. *State,* 127 Tenn. 535, 539, 156 S. W. 458.

█ Another well established rule must be kept in mind, this is, that the jury has seen and heard all witnesses for both sides and after seeing and hearing them has determined these issues against the plaintiff in error. Their credibility has thus been determined. *McGhee* v. *State,* 183 Tenn. 20, 23, 189 S. W. (2d) 826, 164 A. L. R. 617; *Ferguson* v. *State,* 138 Tenn. 106, 109, 196 S. W. 140.

█ When we consider this feature of the defense we are well satisfied that the plaintiff in error fails to sustain his insistence that the evidence preponderates against the verdict of the jury. We have very carefully read this record and to our minds the evidence sustains the conviction rather than preponderates against it. The four officers positively identify the man they saw, as the plaintiff in error; this is supported by the testimony of the witness Owens. Even though Owens was mad at the plaintiff in error his testimony that the plaintiff in error was the one seen hauling part of the still there and as the one who had been seen by him at the still a few days before was obviously a question for the jury. The jury had both parties before them and knew all of these things and they accredited Owens. We see no reason to discredit him here.

█ It is next very strongly insisted that the trial court erred in overruling the motion to quash the indictment. In the first place we think that the trial court was not in error in overruling this motion to quash, because we feel that the indictment presented a legal case against the plaintiff in error even though it might have been inartificially drawn.

The first count of the indictment charged, among other things that "within the last twelve months in the County and State aforesaid, did unlawfully manufacture and

attempt to manufacture in this State, intoxicating spirituous liquors, including whiskey and brandy," and then negativing the fact that it was chemical alcohol that is permitted to be manufactured under the statute.

 As heretofore said this count of the indictment is based upon Code Section 11246. This section among other things provides that, "It shall not be lawful for any person to manufacture or attempt to manufacture any intoxicating whiskey or brandy." There is no provision or requirement in this section of the Code that the whiskey shall be manufactured for sale. This section only applies "against the manufacture of whisky and brandy." *Arinki* v. *State,* 168 Tenn. 393, 79 S. W. (2d) 288. That case is cited by counsel as authority for the fact that the indictment must allege and the proof sustain a correct description of the liquor which the defendant is charged with manufacturing. We do not think that it is necessary that the whiskey be termed as "Old Forrester" or "Jack Daniels" or some of the known brands, but as long as the evidence shows that he is manufacturing whiskey as the evidence in this case does and shows likewise that he has the materials and equipment there for this purpose this is sufficient to bring the charge within the present indictment.

In the Arinki case, the court had positive proof before it that the substance there being manufactured was not being manufactured out of the things that are ordinarily used to manufacture whiskey but what was there being manufactured was being done for people to use on an Easter celebration, they being Assyrians. The court specifically held under the facts of that case that that was not whiskey or brandy within the terms of the applicable section.

■ There is no duplicity in this charge because the charge of manufacturing and attempting to manufacture whiskey and brandy are both defined in the Code section referred to and are both offenses of the same character and punishable by the same penalty. Such offenses may be charged in the same count in the indictment. *State* v. *Jopling*, 29 Tenn. 418; *State* v. *Ailey*, 50 Tenn. 8; *State* v. *Irvine*, 50 Tenn. 155; *State* v. *Callicutt*, 69 Tenn. 714.

■ The plaintiff in error was convicted on the first count of the indictment only. By the verdict of the jury he was acquitted on the second count of the indictment. *Asbury* v. *State*, 178 Tenn. 43, 154 S. W. (2d) 794.

■ Aside from these facts we think that the trial judge properly overruled the motion to quash because it came too late. *Driscoll* v. *State*, Tenn. Sup., 232 S. W. (2d) 28. It is true that in the Driscoll case we did not have the exact situation that we have in the present case. In the Driscoll case the defendant plead not guilty and then in the same trial he moved to quash after he had entered a plea of not guilty. This Court, there, on good authority laid down the rule that the motion to quash after the plea of not guilty comes too late. So far as we know or have been able to ascertain, there is no authority in this State on the proposition presented by the factual situation in this case, but the principle involved in the Driscoll case is applicable. In *Turner* v. *State*, 187 Tenn. 309, at page 320, 213 S. W. (2d) 281, pleas in abatement were filed after the plea of not guilty. This Court there, citing various authorities, clearly laid down the rule that these dilatory pleas, coming after a plea of not guilty, come too late for the reasons set forth in the cases referred to. In the instant case plaintiff in error at the first trial plead not guilty without raising

any question as to the indictment. He was tried and after the jury could not agree a new trial ordered.

Without making any attempt to withdraw his plea of not guilty herein the plaintiff in error then, when the case was called for trial the second time, made the motion to quash the indictment. We think that this came too late. His motion to quash should have been made at the first opportunity. A motion to quash an indictment, under our practice, is the equivalent of a demurrer to the same. A demurrer must be filed prior to the plea of the general issue, and if filed and undisposed of at the time of the plea of general issue, is waived by the general issue.

When the plaintiff in error plead the general issue upon his first trial, and a mistrial was had, such mistrial did not operate to defeat his plea of the general issue, upon which such mistrial was had. That plea stood in full force and still remained to shield him.

Of course, he might have obtained leave to withdraw his original plea and to have interposed his motion to quash but failing therein to ask such leave, it stood and he could not interpose his motion to quash in such situation.

In *Nations* v. *United States,* 8 Cir., 52 F. (2d) 97, 99, the Circuit Court of Appeals held, that where the defendant went through two trials, and it was not until he was approaching a third trial that he filed a motion to quash, that such a motion came too late. That Court very properly said: ''In the orderly administration of justice, there has been announced a rule of practice that motions of this character, striking at the action of a grand jury in returning an indictment, must be seasonably filed or the right so to object is deemed waived. Some of such cases are *Agnew* v. *U. S.,* 165 U. S. 36, 44,

17 S. Ct. 235, 41 L. Ed. 624; . . . *Moffatt* v. *U. S.*, 8 Cir., 232 F. 522, 528''.

For the reasons above expressed, we are satisfied, first, of the guilt of the plaintiff in error and that there is no reversible error in the record. Consequently the judgment below must be affirmed with costs.

All concur.