HARRY CORBETT SHAFER, THOMAS GUS STERGER, JOSEPH
FRANCES NEWMAN and FORREST DELTON CASON,
Plaintiffs in Error,

*v.*

STATE OF TENNESSEE, Defendant in Error.

381 S.W.2d 254.

(*Jackson*, April Term, 1964.)

Opinion filed July 15, 1964.

Grover N. McCormick, Memphis, for Harry Corbett Shafer and Joseph Frances Newman.

William Gerber and Hal Gerber, Memphis, for Thomas Gus Sterger.

Hal Gerber, Memphis, and Sam Anderson, Hot Springs, Ark., for Forrest Delton Cason.

George F. McCanless, Attorney General, and Edgar P. Calhoun, Assistant Attorney General, for the State.

Mr. Justice Holmes delivered the opinion of the Court.

The parties will be referred to according to their status in the Trial Court. The defendants were jointly indicted in a two count indictment for carrying burglarious instruments, in violation of T.C.A. sec. 39-908, and for the possession of explosives for burglarious purposes, in violation of T.C.A. sec. 39-909. The defendants Shafer and Sterger were also each indicted for carrying a pistol. All of the defendants were found guilty under the first count of the joint indictment. The jury fixed the punishment of the defendants Shafer and Newman at imprisonment in the State Penitentiary for not more than 10 years, the punishment of the defendant Sterger at not more than 5 years, and the defendant Cason at not more than 2 years. The defendant Shafer was found guilty of carrying a pistol with the intent to go armed and was sentenced to serve 11 months and 29 days in the Shelby County Penal Farm. The defendant Sterger was acquitted of the charge of carrying a pistol. Motions for a new trial were seasonably filed by all of the defendants. They were overruled by the Trial Judge. Each defendant has perfected his appeal and assigned errors in this Court.

Each defendant asserts that the principal evidence relied upon by the State to obtain a conviction was obtained as the result of an unreasonable search and seizure in violation of the Fourth Amendment to the United States Constitution and Article 1, Section 7 of the Constitution of Tennessee.

The record shows this question arose at the outset of the trial. The jury was excused from the courtroom and for one full day the Trial Judge heard proof and arguments as to the legality of the search. In the absence of the jury four police officers and the defendant Shafer testified before the Trial Judge. At the conclusion of this testimony the Trial Judge made an analysis of the evidence which had been offered and held that the search and seizure made at the time of the arrest of the defendants Shafer and Sterger was legal and that the evidence obtained in this search was competent. He further ruled that certain evidence obtained at the time of the arrest of the defendants Newman and Cason was illegally obtained and, therefore, not competent. After these rulings, the trial proceeded before the jury and the State introduced all of its evidence, including testimony relating to the search which had been held legal by the Trial Judge. The defendants Shafer and Newman rested their case without introducing any evidence before the jury. The defendants Sterger and Cason testified before the jury.

The evidence offered by the Stat on the question of the legality of the search and the arrest of the defendants Shafer and Sterger is in substance as follows:

Shortly after two o'clock on the afternoon of December 29, 1961 the Manager of the Holiday Inn on Third Street, in Memphis, called the Police Department of Memphis

and advised that the night before a woman who had been drinking came into the office of the inn and told the night clerk that four men had tried to pull her into a room at the inn. Two police officers were sent to the inn to investigate this matter. They met the Manager, who advised them that he had four men there who were "staying in pretty close during the day and out all during the night", and that he thought the matter of the complaint made by the woman during the preceding night should be investigated. The police did not obtain a search warrant or warrant for the arrest of anyone.

The officers, who were in plain clothes and wearing topcoats, proceeded toward the room in which Shafer was registered. The defendant Shafer at that time was standing beside his car, in front of this room, with a brief case in his hand. The officers approached Shafer, identified themselves as police officers, introduced themselves, and told him that they were investigating a complaint about some men trying to pull a woman into their room in the motel the night before. Shafer denied any knowledge of any such occurrence. One of the officers, Lieutenant McGee, testified it was a cold day and the defendant Shafer did not have on any topcoat, that, as they were asking him questions about the woman, he invited the officers to come into the room and continue their conversation there. The other officer, Lieutenant Sinclair, testified that, while they were talking to the defendant Shafer, he invited the officers into the room, stating that his friend was in there who would vouch for his statement that they knew nothing of an incident about a woman at the motel.

These officers testified that they followed the defendant Shafer into the motel room, that Mr. Shafer and Lieuten-

ant McGee sat and Lieutenant Sinclair remained standing. When they entered the room the defendant Sterger was in the bathroom taking a shower. Shortly after they entered the room, and while they were asking questions about the alleged incident of the night before, the defendant Sterger came out of the bathroom in his underwear shorts. Shortly thereafter Lieutenant Sinclair noticed a tool box on the floor in the room. It was locked with a padlock. When asked what it was, the defendant Shafer stated it was his tool box and then said he was carrying it to a friend of his. Lieutenant Sinclair then asked if he had a key to it and he responded that he did, and, when asked if he would mind opening the box up, Mr. Shafer unlocked the box and opened it. When this was done, the officers saw a drill and a sledge hammer with a short handle in the box. There were some rags, or towels, in the top of the box. One of the police officers asked the other, ''Do you see what I see?''

Thereupon, Lieutenant McGee reached in the box and discovered there were two loaded pistols wrapped in the rags, or towels, in the top of the box. Under these was a leather purse containing nitroglycerin and other explosives. The officers testified they then immediately put the defendants Shafer and Sterger under arrest and called for additional police officers to come to the scene.

Following the arrest, a complete search was made of the room. A crowbar was found in a paper sack in one of the dresser drawers, and a deputy sheriff's badge was found in the defendant Sterger's coat pocket. The box also contained one pair of handcuffs, 85 Ford automobile keys, 4 flashlights, adhesive tape, chisels, pliers, an assortment of some 12 drills, and various other tools commonly used in burglarizing safes.

After the arrest of these defendants the automobile of the defendant Shafer was searched and, in the trunk of the car, there was found a suitcase containing an oxygen tank, acetylene tank, hoses, gauges for use on the tanks, goggles, gloves and other equipment. Following the search of the room and automobile, the defendants Shafer and Sterger were taken to Police Headquarters. A still watch was set up in the motel room. About nine o'clock on the night of December 29, 1961 the defendants Newman and Cason parked an automobile in front of the room. Cason got out of the car and knocked on the door. The police officers in the room immediately arrested him and then arrested the defendant Newman, who remained seated in the car. These defendants and Cason's automobile were then searched. The Trial Judge ruled that this search was not incident to a legal arrest and, therefore, the evidence obtained by this search was incompetent. Following their arrest, these defendants were taken to Police Headquarters.

In support of their contention that the evidence obtained as a result of the search of the room and the defendant Shafer's automobile following the arrest of the defendants Shafer and Sterger, the defendants strongly rely upon *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, in which it was held that evidence obtained by a search and seizure in violation of the United States Constitution is inadmissible in the State Court. The protection against unreasonable searches and seizures guaranteed by the Fourth Amendment to the United States Constitution is the same as that afforded by the Tennessee Constitution, Article 1, Section 7. In Tennessee, such illegally obtained evidence has always been inadmissible.

■ In *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009, this Court summarized the rule as to the admissibility of evidence obtained by a search incident to an arrest, as follows:

"It will be seen from the foregoing that in declaring the authority of the arresting officer to search and seize, the authority is always limited to (1) offensive weapons and tools of escape and (2) evidence of guilt of the offense for which the lawful arrest has been made." 210 of 173 Tenn., 116 S.W.2d p. 1012.

In *Ellis v. State,* 211 Tenn. 321, 364 S.W.2d 925, this Court, speaking through the present Chief Justice, had occasion to discuss fully the effect of the decision in the Mapp case. Prior to Mapp, it had been held that Article 1, Section 7 of the Tennessee Constitution did not afford protection from unreasonable searches and seizures beyond the limits of this State. In the Ellis case, it was held that under the rule of the Mapp case such protection was afforded by the Fourth Amendment to the United States Constitution.

Neither the United States Constitution nor the Tennessee Constitution defines "unreasonable searches and seizures".

In *United States v. Rabinowitz,* 339 U.S. 56, at page 63, 70 S.Ct. 430, at page 434, 94 L.Ed. 653, it is stated:

"What is a reasonable search is not to be determined by any fixed formula. The Constitution does not define what are 'unreasonable' searches and, regrettably, in our discipline we have no ready litmus-paper test. The recurring questions of the reasonableness of searches must find resolution in the facts and circum-

stances of each case. * * * Reasonableness is in the first instance for the District Court to determine."

Also in *Ker v. California*, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726, it is stated:

"We reiterate that the reasonableness of a search is in the first instance a substantive determination to be made by the trial court from the facts and circumstances of the case and in the light of the 'fundamental criteria' laid down by the Fourth Amendment and in opinions of this Court applying that Amendment." 374 U.S. at 33, 83 S.Ct. at 1630.

These same rules have been stated by this Court in a number of cases, most recently in *Ellis v. State*, supra, in which it is stated:

"There is no definite formula for the determination of the reasonableness or the unreasonableness of a search, but each case is bottomed on its own facts. When the question thus becomes a judicial question, we under the doctrine of *stare decisis* are bound by both the Elliott [173 Tenn. 203, 116 S.W.2d 1009] and Bromley [203 Tenn. 194, 310 S.W.2d 432] cases in determining whether or not from a judicial standpoint the search herein was reasonable and legal." 211 Tenn., at 330, 364 S.W.2d, at 929.

See also *State v. Hall*, 164 Tenn. 548, 51 S.W.2d 851.

■■ All of the authorities agree a defendant may waive his rights relative to searches and seizures under the Constitutions of the United States and Tennessee. The question of whether or not there was such a waiver and consent to the search is one for the Trial Judge in the first instance. This rule was stated as follows by

this Court, speaking through Mr. Justice Dyer, in *Simmons v. State,* 210 Tenn. 443, 446, 360 S.W.2d 10, 11:

"It is true a defendant may waive his rights relative to searches and seizures under the Constitutions of Tennessee and the United States. *Frix v. State,* 148 Tenn. 478, 256 S.W. 449; *U. S. v. Jones,* 7 Cir., 204 F.2d 745. It is also true that for a search without a warrant to be valid the entry must be without coercion. *Byrd v. State,* 161 Tenn. 306, 30 S.W.2d 273."

The Federal case presenting a factual situation most nearly like that in the case at bar appears to be *Honig v. United States,* 8 Cir., 208 F.2d 916, from which we quote, as follows:

"An agent of the Federal Bureau of Investigation, accompanied by two police officers of the City of St. Louis, Missouri, had gone to appellant's hotel room in that city, after the FBI had received a report that appellant had been holding himself out as a federal officer or employee. They went to the hotel merely for the purpose of checking or investigating, without any warrant to make a search or for appellant's arrest. They knocked at appellant's door and, when he appeared, they identified themselves to him. He invited them to come into the room and thereafter admitted to them that he was Frank Walker.

"The FBI agent then informed appellant of the complaint which had been received concerning him and inquired whether he had anything to identify himself. Appellant replied that he did not. The agent then asked whether appellant would mind if they looked around the room to see if they could find any identification, and appellant replied, 'No, certainly, go ahead,

gentlemen.' One of the officers went to the closet, where appellant's coat was hanging, and discovered in one of its pockets the identification card which is here involved. Appellant was confronted with the identification card and admitted that it was his. He was then asked whether he was in fact a federal employee, replied that he was not, and declared that he had merely been using the identification card to impress people. One of the police officers thereupon placed him under arrest.'' 208 F.2d 919.

The evidence thus obtained was held to be admissible. Here, according to the State's proof, the officers entered Shafer's room, not at their suggestion but at the suggestion of Shafer.

In the present case, the defendant Shafer's version of the search as testified to in the absence of the jury is that, after being asked a few questions about the woman in the motel the night before and after he protested his lack of knowledge of any such incident, he was pushed into his motel room by the officers, made to stand against the wall and was immediately searched against his will. The defendant Sterger testified before the jury that while in the shower he heard a commotion in the room, that one of the officers threw the bathroom door open, with his pistol drawn, and made this defendant stand with his hands against the wall in the nude while the search was made.

Under the conflicting testimony, the Trial Judge found the police officers' version of the search to be true and held the evidence obtained by the search to be competent. Thereafter, in his charge to the jury, the Trial Judge instructed the jury on the law of searches and seizures

and told them that evidence seized as the result of an unlawful search must be excluded from their consideration for all purposes. In so instructing the jury, the Trial Judge stated:

"In order to constitute a waiver, the consent given to the search must have been intelligent, free and voluntary, free from coercion, intimidation, force, duress, or 'fraud * * * if the jury should have a reasonable doubt as to whether legal invitation, consent, or waiver were in fact given or were free and voluntary without coercion, duress, intimidation, force, or fraud, or that the consent was real, or that the defendant, Shafer, waived his constitutional rights before search of the tool box, then, the jury should find that the search of the tool box was unreasonable, illegal, and unconstitutional, without waiver and consent, and that the subsequent arrests of the defendants, Shafer and Sterger, were illegal, and searches of the room, person, and clothing of the defendants, Shafer and Sterger, and Shafer's automobile were likewise unreasonable, illegal and unconstitutional, and all the illegal articles found and seized in all said searches should be excluded by the jury from their consideration for all purposes whatsoever."

It thus appears that both the Trial Judge and the jury have found that the arresting officers' version of the facts surrounding the search was true, for, in the absence of the evidence thus obtained, the jury could not have reached the verdict which it did.

As stated in *Batey v. State,* 191 Tenn. 592, 235 S.W.2d 591:

"Another well established rule must be kept in mind, this is, that the jury has seen and heard all witnesses for both sides and after seeing and hearing them has determined these issues against the plaintiff in error. Their credibility has thus been determined." 191 Tenn. at 597, 235 S.W.2d at 593.

■ In view of the authorities cited above, we conclude that the arrest of the defendants Shafer and Sterger was a legal arrest and that the evidence obtained in the search was competent. The assignments of error of all of the defendants relating to this matter are overruled.

■ Each of the defendants assigns as error the refusal of the Trial Judge to give in charge to the jury the following special request:

"If Lts. McGhee and Sinclair told defendant Shafer they were police officers, they were acting under color of office. Entry into the quarters of Shafer was the beginning of the search, and if demanded under color of office, the entry was granted in submission to authority rather than as an understanding and intentional waiver of a constitutional right. Therefore, if you find that Lts. McGhee and Sinclair entered under color of office, you cannot consider the evidence introduced for any purpose."

Under the testimony in the present case, the defendant Shafer's room was entered by the police officers either at the suggestion and invitation of the defendant Shafer or they pushed him into and across the room as claimed by Shafer. No witness testified that Shafer granted the permission to enter the room in submission to authority pursuant to a demand made by the officers. Under the charge of the Trial Judge, if Shafer's version had been

found by the Trial Judge or the jury to be true, there was no consent or waiver of any rights by Shafer. The testimony of the witnesses who testified as to the circumstances under which Shafer's room was entered does not make applicable the rule stated in *Amos v. United States,* 255 U.S. 313, 41 S.Ct. 266, 65 L.Ed. 654, and *Johnson v. United States,* 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436.

■ An examination of the charge of the Trial Judge, excerpts from which we have quoted above, shows that he fully and fairly charged the jury with reference to the law of searches and seizures. In their briefs defendants state that the legality of a search is a question for the Court to decide and not the jury. This is true. The Court in this case did decide that issue after a full analysis of the evidence. In Tennessee:

"The procedure to be followed in passing upon the legality of a search and the admissibility of evidence thus obtained is the same as that followed when objection is raised as to the admissibility of a confession or a dying declaration." *Hill v. State,* 211 Tenn. 682, 367 S.W.2d 460, 462.

See also *Wynn v. State,* 181 Tenn. 325, 329, 181 S.W.2d 332, in which the procedure to be followed in passing upon the admissibility of a confession is fully stated.

In Appendix A to the opinion of Mr. Justice Black, in *Jackson v. Denno,* 84 S.Ct. 1774, Tennessee is listed as one of the States following the orthodox rule with reference to determining the admissibility of confessions. This rule is there stated to be:

"Judge hears all the evidence and then rules on voluntariness for purpose of admissibility of confession;

jury considers voluntariness as affecting weight or credibility of confession.''

If the Trial Judge went further in this case and applied what is termed as the ''Massachusetts or Humane Rule'' referred to in *Jackson v. Denno,* that would not be a denial of due process under the ruling of the United States Supreme Court in that case, nor would it be reversible error. In Appendix A referred to above, the Massachusetts rule is stated as follows:

''Judge hears all the evidence and rules on voluntariness before allowing confession into evidence; if he finds the confession is voluntary, jury is then instructed that it must also find that the confession was voluntary before it may consider it.''

■ The defendants could not possibly be harmed by having the jury in addition to the Trial Judge pass upon the legality of the search in this case. Each assignment of error relating to the refusal of the Trial Judge to give in charge the above quoted special request is overruled.

■ By assignment of error Number Five, the defendant Sterger contends that T.C.A. sec. 39-908 and T.C.A. sec. 39-909 are unconstitutional in that they are in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article 1, Section 8 of the Constitution of Tennessee. It is asserted that these statutes are vague and ambiguous and establish no standards for evaluating (1) the objects that may be deemed to be burglary tools, (2) what persons may be subject to a charge of possession of such objects, (3) the circumstances pursuant to which persons subject to such a charge in possession of such objects may be deemed

violators, and, (4) what intent or overt act is necessary to establish all of the elements of the offense. No authorities in support of this assignment of error are cited in the propositions of law contained in the brief of this defendant, nor are any cited in the written argument.

While this Court has not directly passed upon the constitutionality of these statutes, convictions for the violation of T.C.A. sec. 39-908 have been affirmed in *Trousdale v. State,* 168 Tenn. 210, 76 S.W.2d 646, and *McDonald v. State,* 210 Tenn. 258, 358 S.W.2d 298.

In upholding the constitutionality of a similar statute which was under attack because it did not define "burglar's tools", the Supreme Court of Iowa, in *Mahar v. Lainson,* 247 Iowa 297, 72 N.W.2d 516, cert. den., 350 U.S. 972, 76 S.Ct. 445, 100 L.Ed 843, reh. den., 350 U.S. 1009, 76 S.Ct. 652, 100 L.Ed. 871, stated:

"This statute and similar statutes have been considered by this and many other courts across the land, and it has been the subject of comments in many textbooks. Yet as far as we can learn, not once has the legislation been declared void or unconstitutional as violation of due process. The appellant failed to cite any such holding, but simply refers us to the statute and the State and Federal Constitutions, and argues such prohibition is so general no one could possess ordinary tools or implements and avoid prosecution under that statute." 72 N.W.2d at 518.

Assignment of error Number Five of the defendant Sterger is overruled.

All of the defendants assign as error that there is no evidence to support the verdict and that the evidence

preponderates against the verdict. In passing upon these assignments, it is necessary to review the evidence not heretofore referred to:

The record shows that the defendants Shafer, Sterger and Newman lived in Toledo, Ohio, that on the morning of December 27, 1961 these three defendants left Toledo in Shafer's automobile and drove straight through to Memphis, arriving at the Holiday Inn on Third Street shortly after three o'clock on the morning of December 28th. Shafer registered under his proper name, giving his address as Dayton, Ohio, in Room 344. Newman registered in Room 344 under the name of "George Hill", giving his address as Dayton, Ohio. Sterger registered in Room 342 under the name of "Thomas G. Gray", giving a fictitious street address in Dayton, Ohio, as his address.

On the evening of December 28, 1961, the defendant Cason registered in Room 148 in this same motel under his correct name, giving Hot Springs, Arkansas, as his address. The defendant Sterger testified he registered under an assumed name because he had been an iron worker and when he worked in a strange town he was constantly badgered by people seeking to get him to get work for them. He admitted he made up the Dayton, Ohio, street address. Later Sterger testified he had not worked as an iron worker since the early part of 1961.

On the afternoon of December 25, 1961 the defendant Cason had sent to the defendant Shafer $200.00 by Western Union telegraph from Hot Springs, Arkansas, to Toledo, Ohio. A police officer testified that the receipt of the Western Union Telegraph Company for this money was found in the defendant Shafer's pocket. The defend-

ant Cason testified this receipt was taken from him by the police. This shows that the $200.00 plus charges was received from F. D. Cason, who refused to leave address, at Hot Springs, Arkansas, for delivery to "Harry C. Shafer will call WU. Toledo, Ohio."

The record further shows that on the morning of December 29, 1961 the defendants Cason and Newman checked out of the motel, one minute apart, and left together in Cason's car. Newman checked out of Room 342, which had been occupied by Sterger, and Sterger moved into Room 344 with Shafer. He testified that Shafer wanted to get his car serviced before proceeding further on their journey, that on the morning of December 29th Shafer drove him to a plant that sells oxygen and requested him to go in and purchase the smallest bottle of oxygen that they sell. He stated that he understood the oxygen was to be used by Shafer for his health. He further stated that he put the bottle of oxygen in the trunk of Shafer's car himself after Shafer opened the trunk, but that he did not see at any time any of the equipment later found in the trunk other than a tarpaulin and luggage. He further stated that after leaving the oxygen company he and Shafer went to a service station and had the car serviced and then returned to the motel.

All of the defendants who testified stated that Shafer, Sterger and Newman were on their way from Toledo to Hot Springs, Arkansas, and that the reason they stayed over at Memphis more than overnight was because of Shafer's health and he was exhausted from the long drive from Toledo.

The defendant Cason testified that he did not know and had never met any of the defendants except Newman, that he had placed some horse bets for Newman and owed

Newman $200.00, which Newman had instructed him to send to Shafer. He contends that the first time he ever saw Shafer or Sterger was when they appeared in Court and were bound over to the Grand Jury.

As heretofore stated, after being arrested, all of the defendants were taken to Police Headquarters, where they were questioned until around midnight on the 29th of December. None of the defendants made any written confession.

Lieutenant Wright, of the Memphis Police Department, testified, without objection, that he questioned the four defendants together at Police Headquarters. He stated that he questioned Shafer first. When asked what statement Shafer made about the tools, counsel for Sterger objected "because the question has not been properly qualified." The Court then ordered the Attorney General to specify the tools about which he was inquiring. Without objection, he testified that he next interrogated Sterger and that Sterger admitted he knew the burglary tools were in the car, he, Sterger, was along for the ride and that, as to what participation he, Sterger, was to play in a burglary, he was quite vague. He further testified, without objection, that Sterger admitted the ownership of one of the pistols. Of course, Sterger was acquitted of the charge of carrying a pistol.

Thereafter, this witness testified he next interrogated the defendant Newman after Newman and Cason arrived at Police Headquarters. While testifying as to statements made by the defendant Newman, counsel for Sterger objected and asked "this be excluded from the record because he is saying things that somebody said, and he hasn't said anything about my client being present, and it is not competent as to my client, Mr. Sterger."

Thereupon, the Court interrogated the witness as to the location of the defendant Sterger at the time Newman was being questioned by the witness. The witness testified Sterger was just sitting in the room some 15 feet from Newman and could hear Newman's statements. The Court then overruled this objection.

Thereafter, counsel for Sterger objected to one question as being leading, which was sustained.

When this witness was asked if he had contacted the Delta Oxygen Company of Memphis and procured an invoice for the tank of oxygen that was bought in Memphis, counsel for Sterger objected to the introduction of the invoice. This objection was sustained by the Court. Thereafter, counsel for all of the defendants cross-examined this witness and he was excused from the stand.

The next morning, for the first time, the defendants in the absence of the jury moved that the testimony of this witness be expunged from the record upon the ground that his testimony as to oral admissions or confessions is "incompetent and irrelevant to the issues joined" and is cumulative, and upon the further ground that the admissions testified to were not voluntary and constituted an invasion of the constitutional rights of the defendants and were made without defendants having been advised as to their constitutional rights. The jury, of course, had already heard this witness's testimony both on direct and cross-examination on behalf of all of the defendants.

In response to this motion, the Court stated, that, while some individual objection had been made, counsel for none of the defendants had requested a hearing in the absence of the jury as to the admissibility of any con-

fessions or admissions, but that, on the testimony he had heard, he would rule that the admissions or confessions of the defendant were freely and voluntarily made, "that same were under no influence by any hope or offer of reward, and that no violation or threat was used, or promise or offer of immunity was made". None of the defendants made any offer of any proof at that time as to the admissibility of the admissions or confessions. The Court overruled the motion to expunge the testimony of this witness from the record.

Actually, according to the testimony of the witness Wright, none of the defendants made a confession. In *Collins v. State,* 169 Tenn. 393, 397, 88 S.W.2d 452, 454, this Court stated:

"A confession is an admission or acknowledgment that the accused committed the crime with which he is charged. 1 Bouv.Law Dict. (Third Revision) pp. 588, et seq. It is true that these statements incidentally conceded that the property was found in defendant's possession, but the rule excluding confessions, when not shown to have been made voluntarily, is subject to a well-recognized distinction and limitation particularly applicable to persons charged as in this case, with the offense of receiving stolen property."

See also 23 C.J.S. Criminal Law sec. 816.

In Tennessee, as heretofore stated, the procedure to be followed when objection is raised as to the admissibility of a confession is the same as that to be followed in passing upon the legality of a search and the admissibility of the evidence thus obtained. In *Hill v. State,* supra, this Court stated:

"Since it is the duty of the Judge and not the jury to make the decision as to the legality of the search, it is incumbent upon both parties to offer all of their proof on this question before calling for a ruling from the Court. This practice protects the defendant because it allows him to present his proof on the validity of the search before any ruling is made by the Court and before the Jury is permitted to hear any testimony relating to facts discovered at the search." 367 S.W.2d at 463.

Here, the defendants offered no evidence on the voluntariness of the confessions or admissions testified to by the witness Wright before demanding a ruling from the Court as to the competency of that testimony.

All that we have said heretofore with reference to the recent opinion of the United States Supreme Court in *Jackson v. Denno* is equally applicable here. Among the Tennessee cases cited in Appendix A above referred to is *Wynn v. State,* 181 Tenn. 325, 181 S.W.2d 332. The Wynn case clearly distinguishes the present case from the holding in *Ashcraft v. Tenn.,* 332 U.S. 143, 64 S.Ct. 921, 88 L.Ed. 1192.

The assignments of error relating to the admissibility of the testimony of the witness Wright are overruled.

Turning to the assignments relating to the sufficiency of the evidence to support the verdict, it appears that the defendants Shafer, Newman and Sterger brought the burglarious tools, with the exception of the oxygen bottle, with them in Shafer's automobile from Toledo, Ohio, to Memphis. They all gave false addresses when they registered in the motel. Sterger and Newman used false names in registering. Shafer and Newman spent the day

and night of the 28th in the room where the tool box was kept. Sterger was in the adjoining room. On the morning of the 29th, Sterger purchased the oxygen bottle and, according to his testimony, he placed that bottle in the · trunk of the car and moved into the room where the tools were kept.

 It is well settled that the verdict of a jury in a criminal case approved by the Trial Judge removes the presumption of innocence and raises a presumption of guilt in this Court and determines the credibility of the witness. The burden here is upon the defendant to show that the evidence preponderates against the verdict. *Cooper v. State,* 123 Tenn. 37, 138 S.W. 826; *Batey v. State,* 191 Tenn. 592, 235 S.W.2d 591; *Holt v. State,* 210 Tenn. 188, 357 S.W.2d 57.

 A crime, of course, may be proven by circumstantial evidence as well as by direct evidence. *Marable v. State,* 203 Tenn. 440, 451, 452. The evidence is certainly sufficient to sustain the conviction of these three defendants of the violation of T.C.A. sec. 39-908 within the rules stated in *Trousdale v. State,* supra, and *McDonald v. State,* supra. Likewise, the evidence is sufficient to sustain the conviction of the defendant Shafer of carrying a pistol for the purpose of going armed.

 As to the defendant Cason, the proof shows that he telegraphed money to Shafer, that he came to the motel on the night of the 28th of December, and that he and Newman spent most of the 29th of December together. This proof, in our judgment, however, is not sufficient to show that he is guilty of violating T.C.A. sec. 39-908, the offense of which he was convicted.

It results that all the assignments of error of the defendants Shafer, Newman and Sterger are overruled, and the judgment of the Trial Court as to these defendants is affirmed. The judgment as to the defendant Cason is reversed and he is dismissed.