# WILLIAM RAY BARTLETT, Plaintiff in Error, v. STATE OF TENNESSEE, Defendant in Error.

Court of Criminal Appeals of Tennessee. Feb. 2, 1968.

Certiorari Denied by Supreme Court June 17, 1968.

Roger Murray, Jr., Jack Ross, Savannah, W. J. Reynolds, Selmer, for plaintiff in error.

George F. McCanless, Atty. Gen. of Tennessee, Thomas E. Fox, Deputy Atty. Gen., Nashville, for defendant in error.

## OPINION

OLIVER, Judge.

The plaintiff in error, referred to herein as the defendant, was convicted of involuntary manslaughter in the Circuit Court of McNairy County under an indictment charging him with first degree murder of Ben Edward Moore. For this offense he was sentenced to

serve one to five years in the State Penitentiary. His motion for a new trial being overruled, he prayed and was granted an appeal in the nature of a writ of error to this Court.

The defendant makes three Assignments of Error. However, the sum and substance of them is the usual contention that the evidence preponderates against the verdict and in favor of the defendant's innocence. Defense counsel recognizes this in argument that "Since all of the assignments of error depend upon the error of the jury and the Court in concluding from all the evidence that the defendant was guilty of involuntary manslaughter beyond reasonable doubt, it is appropriate to present this argument in support of all three assignments of error."

In considering such an Assignment of Error, we must do so upon the well-established law of this State that a conviction in a criminal case will not be reversed on the facts unless it is shown that the evidence preponderates against the verdict and in favor of the innocence of the accused, and that the defendant has the burden of demonstrating this from the record. The presumption of innocence disappears upon conviction in the trial court and is displaced here by a presumption of guilt, and it is with this presumption that we must consider the case on appeal. The legal effect of the verdict of a jury approved by the trial court, and the law governing appellate review has been stated and re-iterated by our Supreme Court in numerous cases. A most excellent statement of the law upon this question was made by Mr. Justice Felts in Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523:

"This argument overlooks the legal effect of the verdict of the jury, and also the law governing appellate review. The jury and the Trial Judge saw the witnesses face to face, heard them testify, and observed their demeanor on the stand, and were in much better position than we are, to determine the weight to be given their testimony.

\* \* \* \* \* \*

"On appeal, therefore, the jury's verdict is to be taken as establishing the truth of the case. In civil cases the verdict will not be disturbed on the facts if it is supported by any material evidence. In criminal cases, out of tenderness to human life or liberty, the rule is more lenient: The verdict will be disturbed on the facts only if the evidence clearly preponderates against it and in favor of the innocence of the accused. Cooper v. State, 123 Tenn. 37, 56, 153, 138 S.W. 826.

"As said so often by this Court, the jury's verdict of guilt, approved by the Trial Judge, establishes the credibility of the witnesses supporting the verdict, displaces the presumption of innocence that attended defendant on the trial, raises a presumption of his guilt, and puts on him the onus of showing on appeal that the evidence preponderates against the verdict and in favor of his innocence. Cooper v. State, supra, 123 Tenn. 37, 56-61, 153, 138 S.W. 826; Turner v. State, 188 Tenn. 312, 322, 219 S.W.2d 188; Batey v. State, 191 Tenn. 592, 596, 235 S.W.2d 591, 593; Ivy v. State, 197 Tenn. 650, 652, 277 S.W.2d 363; Anderson v. State, 207 Tenn. 486, 341 S.W. 2d 385.

"So, under the law by which we are bound, we may review the evidence only to determine whether it preponderates against the verdict and in favor of the innocence of defendant; and in such review we must take the verdict as having established the credibility of the State's witnesses."

The late Mr. Justice White stated the rule as follows in McBee v. State, 213 Tenn. 15, 372 S.W.2d 173:

"It is also well-settled in this State that the verdict of the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflict in favor of the theory of the State. Such verdict also removes the presumption of innocence of the accused and raises a presumption of his guilt and puts upon him, here, the burden of showing that the evidence preponderates against the verdict and in favor of his innocence. See White v. State, supra [210 Tenn. 78, 84, 356 S.W.2d 411, 414]; Holt v. State, 210 Tenn. 188, 357 S.W.2d 57 (1962); Anderson v. State, 207 Tenn. 486, 341 S.W.2d 385 (1960); Turner v. State, 188 Tenn. 312, 219 S.W.2d 188 (1949); Batey v. State, 191 Tenn. 592, 235 S.W.2d 591 (1950); Mahon v. State, 127 Tenn. 535, 156 S.W. 458 (1913); Cooper v. State, 123 Tenn. 37, 138 S.W. 826 (1909)."

In the early evening of July 2, 1966, the deceased Ben Edward Moore, along with his brothers Perry Wayne Moore and Donald Moore and their uncle Marlin Tackett, went to the Anchor Club in McNairy County. This establishment was a beer tavern and dance hall, a partition separating the bar from the dance hall. In

the dance hall, they joined Mrs. Susie West, her son Kenneth West, and Ancil Dillon who were already seated at a table. All of these parties were drinking beer. Gordon Sparks was the proprietor, and his wife Betty Sparks was working as a waitress at that time.

Mrs. Sparks went to this table and requested payment of the cover charge of $1.00 each which customers seated in the dance hall portion of the establishment were expected to pay. Donald Moore paid the cover charge, but the other three members of his party refused to do so. Almost immediately thereafter, the proprietor came in and demanded payment of the cover charge, or, in the alternative, that the deceased and his brothers and their uncle finish their beer and leave within five minutes. Donald Moore's dollar was returned to him.

After about five minutes, the proprietor returned to the table where these parties were seated, apparently with the intention of requiring them to leave the establishment. The defendant was with the proprietor at this time. He had patronized this place before and was well acquainted with the proprietor. A fight started immediately between the deceased's two brothers and their uncle and the proprietor. According to witnesses for the State, when this difficulty began the defendant pulled a small .22 caliber white-handled dark-colored pistol from his pocket and began shooting directly into the group of men, and one of the first shots hit the deceased in the top of the head, fatally wounding him. It is uncontradicted that the deceased had not become involved in the difficulty, and that he was still seated in a chair at the table. He died the following morning about 4 o'clock in the Kennedy Hospital in Memphis.

During this wild melee, the defendant fired some four or five shots. Donald Moore advanced upon the defendant and attacked him when the shooting started and was shot twice himself, in an arm and in a thigh. During the fight between them, Donald Moore recovered the pistol from the defendant who then immediately started running toward the door. Donald Moore fired twice at the defendant as he left, one of which shots struck the defendant in the back just below his belt.

The defendant testified that he was seated alone at a table in the dance hall, having gone there in search of his brother. He was drinking beer. While sitting there he thought he heard a car that sounded like his brother's and went to the front. The proprietor was arguing with the Moores when he passed their table, and there was cursing. When he came back, they were pushing and shoving and the defendant asked Kenneth West, who by this time had moved with his mother to another table, why they were throwing the Moores out. The next thing he knew he was hit in the face with something and somebody said, "He's a tough son-of-a-bitch, I'll shoot him." The blow on his face made a laceration which required some forty suture stiches. He said that Donald Moore began shooting at him with a pistol; that he grabbed hold of Donald's wrist and that they scuffled and wrestled over the pistol; that it was fired three times during the scuffle; and that he never had his finger on the trigger of the pistol and never had it in his hand at any time. There was some defense testimony to support the defendant's story, and some of his witnesses believed that the deceased was in the line of fire as Donald Moore began shooting at the defendant and that the deceased

fell to the floor during that shooting. The defendant said that he had never owned a pistol like the one identified as the gun used in this affray, a .22 caliber blue white-handled "Rohm" pistol of German manufacture. He testified that his .22 caliber High Standard chrome plated, white-handled revolver had a 6 inch barrel, and was in the glove compartment of his automobile parked outside during all this time, and that he later turned it over to the Highway Patrolman who assisted him in getting to the hospital for treatment of his wounds.

Manifestly, the evidence introduced by the State and the defendant is conflicting, almost diametrically opposed insofar as the essential facts are concerned. The crucial factual question in this case was whether or not the defendant was the one who produced the gun and began firing into this group of men. The jury elected to believe the State's witnesses and resolved this issue in favor of the contentions of the State. The evidence does not preponderate against the verdict and in favor of the defendant's innocence. He has failed to carry the burden of establishing that the evidence preponderates against the verdict and in favor of his innocence.

It is not for us to agrue the facts or the question of guilt or innocence. In Cooper v. State, 123 Tenn. 37, 138 S.W. 826, with respect to determining the preponderance of the evidence, the Court said:

"It must appear to all that, under the rules we have stated, no case can be reversed on the facts where an elaborate argument of the evidence is necessary to affect that end. The very necessity for such a thing rebuts the idea that the verdict is against the clear

preponderance of the evidence; nor, as a rule, is it properly the *providence* of the court to make an argument, but, on the contrary, after full and exhaustive consideration, to state its conclusion, upon both the facts and the law."

And in the case of Hargrove v. State, 199 Tenn. 25, 281 S.W.2d 692, the Court stated again this rule:

"In considering the assignments of error based upon that testimony, this appellate court must apply the rule that credibility of witnesses and conflicts in testimony have all been settled by the verdict of the jury. This makes unnecessary and, indeed, inappropriate, a detailed discussion of that evidence, pro and con, Cooper v. State, 123 Tenn. 37, 60-61, 138 S.W. 826, in stating what we conclude the material facts to be as established by that testimony."

Tennessee Code Annotated, Section 39-2409 defines manslaughter as follows:

"Manslaughter is the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act."

Involuntary manslaughter is a homicide committed under such circumstances that it plainly appears that neither death nor bodily harm was intended by the party doing the killing, and that death was accidentally caused by some unlawful act, or by some act not strictly unlawful in itself but done in an unlawful manner and without due caution, and that death was the natural or probable result of such act. Lee v. State, 41 Tenn. 62;

Nelson v. State, 65 Tenn. 418; Manier v. State, 65 Tenn. 595; Copeland v. State, 154 Tenn. 7, 285 S.W. 565, 49 A.L.R. 605; Wade v. State, 174 Tenn. 248, 124 S.W.2d 710; Harper v. State, 206 Tenn. 509, 334 S.W.2d 933.

The defendant's conduct, as found by the jury upon abundantly sufficient evidence, could not have amounted to less than involuntary manslaughter under any circumstance.

Tennessee Code Annotated, Section 40-2520 provides as follows:

"Conviction of lesser offense.—Upon an indictment for any offense consisting of different degrees, the jury may find the defendant not guilty of the degree charged in the indictment and guilty of any degree inferior thereto, or of an attempt to commit the offense; and the defendant may also be found guilty of any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor."

Manslaughter is a lesser included offense of the crime of murder, and is by operation of law embraced within an indictment charging murder; and under such an indictment the defendant may be convicted of involuntary manslaughter. In the case of Grindstaff v. State, 172 Tenn. 77, 110 S.W.2d 309 it was said:

"The common-law doctrine of merger is abolished in Tennessee by section 11758 of the Code (section 5222 of the Code of 1858) [T.C.A. § 40-2520]. This section is very broad and comprehensive in its terms and authorizes the conviction of the accused of any

offense which is embraced in that charged in the indictment. Lancaster v. State, 144 Tenn. 21, 229 S.W. 150. By the express terms of this statute, the accused may be found guilty 'of any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor.' "

And in Strader v. State, 210 Tenn. 669, 362 S.W.2d 224, the Court said:

"It is true at common law where one act amounted to both a misdemeanor and a felony, the misdemeanor was merged in the felony, and only the latter was punishable. Grindstaff v. State, 172 Tenn. 77, 110 S.W.2d 309. But that common law rule has been changed by our statute (T.C.A. § 40-2520), providing that defendant may be found guilty of 'any offense the commission of which is necessarily included in that with which he is charged, whether it be a felony or misdemeanor.'

"So now when one is put on trial on a single charge of felony, he is also on trial for all its lesser included offenses, as the facts may be. For example, a charge of murder in the first degree also includes the lower grades of homicide, assault with intent to commit murder, assault and battery, and a simple assault. Jones v. State, 128 Tenn. 493, 161 S.W. 1016; Templeton v. State, 146 Tenn. 272, 278-281, 240 S.W. 789."

We have studied this record carefully. There is no prejudicial error.

The Assignments of Error are overruled and the judgment of the trial court is affirmed.

WALKER, J., did not participate in the hearing and disposition of this case.

GILLIAM, J., concurs.