LEE COLE and ALVIN ECHOLS, Plaintiffs in Error v.
STATE OF TENNESSEE, Defendant in Error.
—475 S.W.2d 196.

September 22; 1971.

Certiorari Denied by Supreme Court December 20, 1971.

646

Walter P. Ellis, George W. Carpenter and Paul R. Leitner, Chattanooga, for plaintiffs in error.

David M. Pack, Attorney General, C. Hayes Cooney, Assistant Attorney General, Nashville, Paul Herrell, Assistant District Attorney General, Chattanooga, for defendant in error.

OLIVER, J. Under an indictment charging them and one James Lightner with the armed robbery of Larry

Eaton, defendants Echols and Cole, indigent and represented by court-appointed counsel, were convicted of robbery in the Criminal Court of Hamilton County and were sentenced to imprisonment in the State Penitentiary for not less than five years nor more than 15 years. They have duly perfected their appeal in the nature of a writ of error to this Court. Lightner, convicted of petit larceny and sentenced to pay a fine and to confinement in the county workhouse, did not appeal.

The defendants' Assignments of Error reiterate and urge the same insistences advanced in their motions for a new trial.

■ One Assignment challenges the sufficiency of the evidence to warrant and sustain the verdict of the jury. The law is well settled in this State, and has been reiterated in numerous cases, that a guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State. Such a verdict removes the presumption of the innocence of the accused which stands as a witness for him until he is convicted, and raises a presumption of his guilt upon appeal, and he has the burden upon appeal of showing that the evidence preponderates against the verdict and in favor of his innocence. Gulley v. State, 219 Tenn. 114, 407 S.W.2d 186; Jamison v. State, 220 Tenn. 280, 416 S.W.2d 768; Webster v. State, Tenn.Cr.App., 425 S.W.2d 799; Brown v. State, Tenn.Cr.App., 441 S.W.2d 485; Palmer v. State, Tenn.Cr.App., 435 S.W.2d 128; Morelock v. State, 3 Tenn.Cr.App., 292, 460 S.W.2d 861.

We summarize the material evidence. Larry Eaton went to the Toreno Restaurant, a Chattanooga beer tavern, about 11:00 or 11:30 the night of May 26, 1969, to get a beer and look for a "female companion." Carolyn Irene Hammonds approached him and let it be known that her intimate company was available for a price and told him she knew where they could get a room for $2.00. When he agreed, she said, "Well, wait a minute" and went outside and talked to the defendant Echols. She and Eaton then went in his car to a house which he did not like. She suggested that they go to another place, and when they emerged from that house and approached his car the defendant Echols appeared and talked with the girl and asked Eaton if he would take him some place and Eaton agreed. They stopped outside Robert Shannon's "good time house" near a railway terminal, and Echols got out of the car. The girl "was trying to up the price" and Eaton told her he had $5.00 and "If you don't want that, forget it." She agreed, and he sent her inside the house to get change for a ten dollar bill. Meanwhile, Cole and Lightner had driven up in a white panel truck and parked behind Eaton's car. When the girl went in the house, Cole got into Eaton's car and asked him if he was going to give her $8.00. Eaton replied, "No, we agreed on $5.00," and Cole got out of the car. Becoming apprehensive about the maneuvering, when the girl returned Eaton told her "to forget it." She returned his money and he put it in his shirt pocket and she got out of the car. When he started to drive away, the defendant Cole again got in the car, stuck a knife against Eaton's stomach and said, "I caught you with my wife, didn't I?" He asked him if that was all the money he had and took the $10 out of Eaton's shirt

pocket. About that time Echols opened the door on the driver's side of Eaton's car and stuck something in his ribs which Eaton thought was a gun and relieved him of his green billfold which contained $4.00. Cole continued to menace Eaton with the knife, scratching his stomach and chest with it and telling him, "I like to cut; I like to cut people. You believe I'll kill you? You believe I'll kill you?" Lightner was standing outside of the car. Eaton told them that he had $100 hid under the hood of his car and they could have it and asked them to let him show them where it was, and they jerked him out of the car and they all walked around in front of it. When they couldn't get the hood of the car unfastened, Eaton told Echols to release the hood latch under the dash inside, and when Echols sat down in the car to do so Eaton fled on foot, with Cole chasing him with the knife and threatened to throw it if he didn't stop. In his flight Eaton hailed two county officers, Holt and Desha, who were in a county patrol car. He was yelling, "Help! I've been robbed. They're going to kill me." He told them what had happened and got in the car and directed them to the scene and described the defendants and the truck they were in. When that truck was seen emerging from an alley, Eaton pointed it out to the officers. When the officers stopped this truck, Lightner was driving, Carolyn Irene Hammonds was on the seat beside him, and Cole and Echols were lying down in the rear of the truck. Searching the rear portion of the truck, the officers found Eaton's billfold (empty) and a bone-handled knife in a mop bucket, and in the girl's pocketbook they found a knife and an ice pick.

Eaton denied that he and the girl were engaged in a physical altercation or struggling beside his car when the defendants arrived at the scene of the robbery.

Echols and Cole testified, in material substance, that while they and Lightner were at the Toreno Restaurant near midnight on the night in question they drank some beer and whiskey and then, at Echols' request, they drove in the white panel truck to Robert Shannon's "good time house" to pick up Miss Hammonds, who had left the restaurant earlier in the evening to visit Shannon's wife and who previously had been Echols' common-law wife; that Lightner was driving the truck, which belonged to the owner of the Toreno Restaurant for whom Cole and Lightner worked in his janitor service business; that when they arrived at Shannon's house, they saw Eaton and Miss Hammonds wrestling beside his car; that Lightner stopped and Cole picked up a "squegee" (a device used in window washing) out of the truck and he and Echols started toward Eaton and the girl; that Eaton fled when they approached and they did not talk with him or lay a hand on him; that Miss Hammonds picked up her wig from the pavement and asked them to take her home and they all got in the truck and were stopped by the county officers shortly thereafter and were turned over to city officers who arrived within a short time.

Lightner testified that when he drove up to Shannon's house, Cole and Echols got out and talked with Eaton and Miss Hammonds; that Echols and Cole and Eaton then got in the front seat of the latter's car with Eaton in the center; that he stood on the outside of Eaton's car but could not hear the conversation inside because "They

were talking real low''; and that after a short while Echols got out of Eaton's car on the driver's side and Eaton got out on the same side and ran away yelling, ''Help,'' and Echols and Cole chased him a short distance. Neither of the co-defendants knew anything about Eaton's billfold being in a mop bucket in the rear of the truck, and each denied having or seeing either of the others with a knife or other weapon.

■ Considering the evidence in the light of the rules governing appellate review, by which we are bound, manifestly it must be said that the defendants have failed to carry their burden of demonstrating here that the evidence preponderates against the verdict and in favor of their innocence.

■■ Another unfounded insistence of the defendants urged upon us is that their motion for a mistrial upon the ground that Carolyn Irene Hammonds did not appear as a defense witness although subpoenaed, was erroneously overruled. As the trial court correctly found, after hearing evidence adduced by the defendants at the hearing upon their motions for a new trial, there is nothing whatever in this record to indicate what Miss Hammonds would testify if presented as a witness. Indeed, in Echols' Assignment of Error on this subject he candidly states, ''It could not be stated to the Court within any degree of certainty what the witness would have testified to, had she been present.'' It appears that she was in Georgia and declined to return.

Furthermore, inasmuch as neither the defendants nor their counsel had any idea what this woman would testify about the incident, or whether she would claim her Fifth

Amendment privilege against self-incrimination, defense counsel's motion to take her deposition could only have contemplated discovering what she knew and would say as a witness, and the trial court correctly declined the defense motion to take her deposition and defer ruling on the new trial motion in the meantime. Discovery depositions in criminal cases are not permitted in this State. T.C.A. sec. 24-1201; Craig v. State, Tenn.Cr. App., 455 S.W.2d 190.

 Likewise untenable is the defendants' contention that the trial court committed error in overruling their motion for a mistrial and a severance made during the progress of the trial upon the ground that the testimony of the co-defendants was antagonistic. When the State concluded its proof in chief, the attorney for each of the three co-defendants moved for a directed verdict, failing in which Cole's attorney made a motion "that the Court either declare a mistrial, or, in the alternative, either declare a mistrial in the other two cases and let us proceed with Lee Cole, or declare a mistrial in his case and proceed with the other two defendants. Anyhow, we don't think that he should be tried with the other two defendants." The stated basis for this motion was "because there has arose a difference in what we contemplate would be their testimony, and we think that it would be critical and that these defendants should have separate trials." Cole's counsel further said to the court: "Well, if the Court please, there's a difference in the sequence of events that took place after this alleged incident occurred. Actually, he concurs with one of the other co-defendants, but it's one of the other co-defendants that varies in the sequence of events. I

think it's important that he be tried alone, or that he be tried with defendant Echols and separate their trials from James Lightner.'' Presumably, the conflict of testimony referred to concerned Lightner's version of what occurred when the three co-defendants arrived at the Shannon house, as above indicated in our summary of the evidence, although the anticipated conflict in Lightner's testimony upon that point was not indicated to the court by Cole's attorney during presentation of his motion. No such motion was made by the co-defendants Echols and Lightner. Moreover, it should be observed here that neither Cole nor Echols interposed any objection to any part of Lightner's testimony.

It is axiomatic that a motion for a severance is addressed to the sound discretion of the trial court, and that he will not be put in error for failure to grant a severance unless it can be shown that the defendant was clearly prejudiced thereby. Hunter v. State, 222 Tenn. 672, 440 S.W.2d 1; Davis v. State, Tenn. Cr. App., 445 S.W.2d 933.

■ The next complaint is that the trial court committed prejudicial error in permitting the arresting officers to testify concerning the finding of Eaton's billfold and a knife when they searched the truck after stopping the defendants in the pursuit which began when Eaton hailed them and related that he had been robbed and described the defendants and the vehicle. As noted earlier, those county officers detained the defendants and turned them over to city authorities who were summoned and arrived shortly thereafter. There can be no question upon this record that the county officers had probable cause and

wholly adequate reason for stopping and detaining the defendants. Clearly, the defendants were legally detained in the custody of those officers and they were actually in lawful arrest, as the trial court properly found, even though those officers testified that they had not formally advised the defendants that they were under arrest. Murphy v. State, 194 Tenn. 698, 254 S.W.2d 979; West v. State, 221 Tenn. 178, 425 S.W.2d 602; Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134.

Having arrested the defendants upon reasonable cause for believing that they had committed a felony [T.C.A. sec. 40-803(3) and (4)], the officers' search of the vehicle was plainly incident to the arrest and was constitutionally permissible and the evidence concerning the fruits of the search was admissible.

■ It is fundamental law that one lawfully arrested may be searched in his person or premises where he is arrested, without a warrant, provided the search is incident to the arrest. Shafer v. State, 214 Tenn. 416, 381 S.W.2d 254; White v. State, 210 Tenn. 78, 356 S.W.2d 411; Bromley v. State, 203 Tenn. 194, 310 S.W.2d 432; Liakas v. State, 199 Tenn. 298, 286 S.W.2d 856; Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20, L.Ed.2d 917; Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685.

■ Equally unmeritorious is the contention of the defendants that the court erred in admitting the testimony of Eaton concerning what he told Officers Holt and Desha, after he stopped them and they picked him up, regarding the incident and the defendants and the white panel truck.

This testimony by the victim was merely a factual recital of steps taken by him in fleeing from the defendants and in enlisting the assistance of the officers and cooperating with them in the apprehension of the defendants. As such, his testimony was competent. Moreover, the defendants interposed no objection to the later testimony of the two officers about the same matters.

■■ ■ In any event, the law is settled and is no longer debatable that improper admission or rejection of evidence is not ground for reversal unless it shall affirmatively appear that the alleged error affected the result of the trial. Management Services, Inc. v. Hellman, 40 Tenn.App. 127, 289 S.W.2d 711; Oman Construction Co. v. Tennessee Central Railway Co., 212 Tenn. 556, 370 S.W.2d 563; McBee v. State, 213 Tenn. 15, 372 S.W. 2d 173; T.C.A. sec. 27-117; Rule 14(6) Rules of Supreme Court of Tennessee, adopted by this Court. In our judgment, upon this record it cannot be said that admission of the victim's testimony reciting the indicated information he gave to the officers adversely affected the result of the trial to the prejudice of the defendants.

The judgment of the trial court is affirmed.

Walker, P.J., and Dwyer, J. concur.