JAMES THOMAS ELLIS

*v.*

STATE OF TENNESSEE

364 S. W. 2d 925.

(*Jackson*, April Term, 1962.)

Opinion filed February 7, 1963.

ARTHUR J. O'DONNELL, Chicago, Ill., WALTER BAKER HARRIS, Jackson, for plaintiff in error.

GEORGE F. McCANLESS, Attorney General, THOMAS E. Fox, Assistant Attorney General, Nashville for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Ellis was convicted of armed robbery and sentenced to serve ten (10) years in the State penitentiary. From

this conviction he has seasonably appealed, briefs have been filed, argument heard, and, after considerable study of the record and authorities, we have the matter for determination.

The assignments are to the effect that the evidence preponderates against the verdict and in favor of the innocence of the accused and that such evidence as was introduced was obtained by an unreasonable search in violation of Article I, Section 7 of the Constitution of Tennessee and the Fourth Amendment of the Constitution of the United States.

On October 22, 1961, a packing company in Jackson, Tennessee, was entered about 7:00 a.m. and over $400.00 was taken from the cash register. An employee of the packing company had opened the place of business about an hour before the robbery took place. While this employee was in the plant's office by himself four men came in and ordered meat from him for a local barbecue place. As this employee was writing out the order one of the four men held a gun in his face and said, "This is a holdup." This employee was then taken to a back office and tied up. He was requested to give the holdup men the combination to the safe but refused to do so, and they slapped him upon this refusal. This employee was then taped up over his mouth and was left there. This employee could not identify Ellis but did identify one of the other men.

Another employee of the packing company was in the place of business at the time and as he approached the front of the building, having come from the boiler room, he met three men who grabbed him, and informed him, "do what he tells you * * * it is a holdup", and then

they bound this employee with wire and tape and left him in the back office with the other employee, who they had previously taped and bound in a similar fashion.

This witness came up from the boiler room to the front door and noticed a 1961 light green Pontiac automobile sitting at the corner of the building. This witness could identify three of the men who tied him up but he could not identify Ellis.

Shortly thereafter the Police Department of Jackson was notified by a cleaning woman who came to the place to work. Two members of the police department arrived a few minutes later and they found the two employees bound and taped, as above indicated. The plaintiff in error, Ellis, was indicted along with three others. At the beginning of the trial two of these three withdrew their pleas of not guilty and pled guilty to the offense. The third had been previously committed to a mental institution.

The pistol used in the robbery was identified by one of the two men who had been taped up. This pistol was found by a Deputy Sheriff who lived in or near Corinth, Mississippi. It had been traded by a party consisting of Ellis, the present plaintiff in error, two other men and a girl to an antique dealer of Corinth, Mississippi, about 2:00 o'clock on the day of the robbery. Ellis, the plaintiff in error, and two other men had obtained the pistol from a furniture dealer in Corinth, Mississippi, about 3:30 on the afternoon before the robbery. An automobile (1961 light green Pontiac) was seen to come into Highway 45 from the Rustic Inn just north of the city limits of Corinth, Mississippi, and drove in the direction of Jackson, Tennessee, a distance of about fifty-two miles on the

morning of the robbery about 6:15 or 6:30 a.m. Because of the fog, it was not determined how many people were in the car.

The Sheriff's office of Corinth, Mississippi, received a complaint from the Rustic Inn on Monday afternoon about 2:00 or 2:15 on October 23, 1961, the day after the robbery. They went there in response to this complaint and found the plaintiff in error, Ellis, along with another man and two women, who were released by the Mississippi authorities a short time later upon the condition that they would "get out of town". Later that same day between 7:15 and 7:30 p. m., these officers were again called back to the Rustic Inn where they found four men, one of whom was the plaintiff in error, Ellis, and two women picnicking and drinking on the outside. This party was placed under arrest. These officers found at that time at the Rustic Inn a 1961 Pontiac automobile which belonged to the plaintiff in error. This fact is made known by the plaintiff in error afterwards showing the papers to the car to a Mississippi officer. The officers, during the day after the robbery, had received information of the robbery in Jackson and of the 1961 Pontiac automobile. When the Sheriff at Jackson was told of the type automobile owned by the plaintiff in error, he ordered it searched. This search was made after this arrest and the parties taken to jail in Mississippi after 7:30 p. m. After the Sheriff in Tennessee had asked the people to make the search they then searched this car and a cabin at the Rustic Inn which had been occupied by the plaintiff in error, Ellis, and his party. As a result of this search a partial roll of adhesive tape was found in the automobile and three snub-nosed .38 caliber pistols were found in the cabin.

An agent of the FBI testified that in his opinion the tape taken from the mouths of the two employees of the packing company came from the roll found in Ellis' car. The antique dealer who had traded for the pistol used in the robbery identified the three .38 caliber snub-nosed pistols to be pistols he had traded and sold the plaintiff in error and others who were with him at the time he acquired the pistol used in this robbery.

■■ Thus it is shown by this record that the only way the evidence of the adhesive tape in the plaintiff in error's car was connected with that on these bound employees was by reason of the search made of the car on the day following the robbery while this plaintiff in error was in the custody of Mississippi officers, having been arrested by them for a disturbance made at the Rustic Inn. The pistol used in the robbery and its connection with the robbery was only discovered through the search made of the cabin while plaintiff in error and others were under arrest by the Mississippi officers for a disturbance made there on that afternoon and the subsequent tracing through the pistol there found back through others in Mississippi. In other words the only evidence to connect this plaintiff in error with this robbery, and we might say this evidence would be sufficient to sustain a conviction if it is legally secured, was found through evidence obtained by the search made of plaintiff in error's automobile and his cabin while he was under an arrest for his loud talking and riotous acts of a drunken party.

Under this record we must assume that this arrest made late in the evening of the day following the robbery was a lawful arrest. In making this arrest though for what was going on there at the cabin no search was at-

tempted, and apparently none thought about of either the car or the cabin until afterwards when the Tennessee officer communicated with the Mississippi officer, and it was then they went back and made the search. This search was in no way connected with or incidental to the lawful arrest which had been made. Such a search then was clearly unreasonable and any evidence secured thereby would not be subject to be used in the prosecution of this plaintiff in error because the search was not made incident to the arrest. *Elliott v. State,* 173 Tenn. 203, 116 S.W.2d 1009; *Bromley v. State,* 203 Tenn. 194, 310 S.W. 2d 432. This Court said in the Elliott case, supra:

"It will be seen from the foregoing that in declaring the authority of the arresting officer to search and seize, the authority is always limited to (1) offensive weapons and tools of escape and (2) evidence of guilt of the offense for which the *lawful arrest* has been made."

The State insists that the Sheriff's office in Mississippi had sufficient information to justify an arrest of the plaintiff in error for robbery or subsequent information would justify the issuance of a search warrant for the plaintiff in error's car and his motel cabin. Unquestionably under this record there was ample time after this arrest was made on Sunday evening while these people were being held for a threatened breach of the peace to have secured a search warrant before this search was made, because the picture shown in this record is that these parties were held in the Town of Corinth and some little distance from where this Rustic Inn was, and that while they were being held there a communication was had with the Tennessee authorities and then they went

out and made the search. The search was not made, and had no connection whatsoever with the arrest.

In *Kaufman v. State*, 189 Tenn. 315, 225 S.W.2d 75, this Court held that evidence secured by an unlawful search and seizure in another State was admissible in this State regardless of how illegal it was when secured. This case though has since that time been directly overruled (of course, without referring to the Kaufman case) by the Supreme Court of the United States in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081. In the Mapp case the Supreme Court of the United States overruled former decisions of that Court and clarified many other holdings of the courts over the country wherein it had been held formerly, as the Kaufman case above, that even though evidence was secured illegally in a foreign juris-diction it could be presented in a local jurisdiction, and various and sundry other rules relating to the exclusion-ary rule of evidence secured by an illegal search. The Supreme Court of the United States in the Mapp case, among other things, said:

"We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court."

This holding is based upon the interpretation of the Fourth Amendment. The court further says in the Mapp case:

"Moreover, our holding that the exclusionary rule is an essential part of both the Fourth and Fourteenth Amendments is not only the logical dictate of prior cases, but it also makes very good sense. There is no war between the Constitution and common sense. Pres-

ently, the federal prosecution may make no use of evidence illegally seized, but a State's attorney across the street may, although he supposedly is operating under the enforceable prohibitions of the same Amendment. Thus, the State, by admitting evidence unlawfully seized, serves to encourage disobedience to the Federal Constitution which it is bound to uphold.''

The Attorney General in his brief poses a question that is presented in the present lawsuit which is ''whether or not since the defendant was already under arrest and in the custody of the Sheriff the law requires a formal arrest for robbery in this case of the defendant who was already in custody before searching his automobile and motel cabin or should the test be whether or not the officers had sufficient information to justify the arrest but failed to go through the formality of performing it before making the search. A similar theory or argument was presented to this Honorable Court in *Bromley v. State,* 203 Tenn. 194 [310 S.W.2d 432], and rejected. See Pages 197-198 of that opinion [310 S.W.2d pages 434-435]. However, since the opinion in the Bromley case, the United States Supreme Court has declared in *Mapp v. Ohio,* 367 U.S. 643, 6 L.Ed. [2d] 1018, 91 [81] S.Ct. 1684, that the Fourth Amendment to the Federal Constitution prohibiting illegal searches and seizures applies to the states but for the holding in the Mapp case the rule in *Kaufman v. State,* 189 Tenn. 315 [225 S.W.2d 75], to the effect that a defendant cannot claim immunity under the Tennessee Constitution from an illegal search in another state would be sufficient basis for the rejection of this assignment of error.'' Thus the State, after making this statement and concession argues that the only rule, and the rule to apply in the present case, is a Fed-

330

eral Rule for determination of the reasonableness of the search herein. In other words, this Court held in the Bromley case (203 Tenn. 194, 310 S.W.2d 432) that since the search was not incidental to the arrest, the evidence secured thereby was inadmissible under a very similar state of facts to those in the case now before us. This Court in the Bromley case said:

"We are not satisfied that the search in the case at bar was incidental to a lawful arrest and hence lawfully authorized. In fact there is grave doubt in the minds of the Court if the defendant was ever arrested until after the search, in fact long after it was made. It results that the assignments of error are sustained."

Thus it is under the law of this State, as set forth in the Bromley and Elliott cases, supra, that if the search is not incidental to the arrest then the search is illegal and this must be the law that we must apply to the factual situation in the present case in determining whether or not the search herein was reasonable and a legal search.

█ Of course, it is a judicial question as to whether or not a search is reasonable or unreasonable. There is no definite formula for the determination of the reasonableness or the unreasonableness of a search, but each case is bottomed on its own facts. When the question thus becomes a judicial question, we under the doctrine of *stare decisis* are bound by both the Elliott and Bromley cases in determining whether or not from a judicial standpoint the search herein was reasonable and legal. As we have pointed out in the outset the search had no connection with the arrest, but the search was made after the parties were arrested and taken in for a probable breach of the

peace, upon the call of a Sheriff from our State asking that the search be made. There was ample opportunity for a search warrant to have been procured to have satisfied the matter, but this not being done and the matter handled as it was in view of the Bromley and Elliott cases and other cases which are cited in those opinions, we must determine that this search was illegal and thus the evidence secured thereby inadmissible.

As said above the State argues as quoted from their brief that we should adopt the rule formulated in Federal cases to determine whether or not the formal arrest of defendant was necessary to justify a search of his automobile and in support of their argument they cite *Husty v. United States,* 282 U.S. 694, 700, 51 S.Ct. 240, 241, 75 L.Ed. 629, 632 and quote therefrom, as follows:

> "The Fourth Amendment does not prohibit the search, without warrant, of an automobile, for liquor illegally transported or possessed, if the search is upon probable cause; and arrest for the transportation or possession need not precede the search.", citing authorities.

This case involved a set of facts wherein certain officers were notified that known bootleggers were going to go out with a load of liquor. They stationed themselves around to watch the car when it was going to haul the liquor, and when the operator and others came to the car the operator was arrested and others escaped. A search was then made of the car and liquor found. It was the contention that it was an illegal search. Mr. Justice Stone, speaking for the court at that time, held that the search was not illegal and that there was probable cause for the arrest. Cases of similar import from

our State, such as *Thompson v. State,* 185 Tenn. 73, 203 S.W.2d 361, were cited and distinguished in the Bromley case, supra. In the first place we do not think that our statutes authorizing searches and seizures as particularly set forth in the Elliott case, supra, give us any right to extend the law of search and seizure to the homes, property, etc., of others beyond the extent as set forth by these various statutes and authorities as cited in the Elliott case. Neither the factual situation as we have it herein, nor any that we can think of now, would justify the blank statement that a search could be made on probable cause. Where such has been done in this State, as in the Thompson case, supra, and some of those cases, and the same is true in the *Husty v. United States* case, supra, the informant is known to the officers to be a reputable person who gave them that information at the time. We do not think that such reasoning or rule applies to the instant case in view of the facts as hereinbefore set forth.

We close this opinion by another quotation from *Mapp v. Ohio,* supra, thus:

"The criminal goes free, if he must, but it is the law that sets him free. Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in *Olmstead v. United States,* 1928, 277 U.S. 438, 485, 48 S.Ct. 564, 575, 72 L.Ed. 944 [959, 66 A.L.R. 376]: 'Our government is potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. * * * If the government becomes a law breaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy.' Nor can it

lightly be assumed that, as a practical matter, adoption of the exclusionary rule fetters law enforcement. Only last year this Court expressly considered that contention and found that 'pragmatic evidence of a sort' to the contrary was not wanting.''

In other words what is here being referred to, than to allow officers or individuals the liberty to go and enter another person's property without securing a search warrant or making such a search following our statutes, as alluded to in the Elliott case, and thus breaking our own law, it is better that we should let a criminal go free than to sanction practices which are in violation of our basic Constitutions.

The result is that the judgment herein is reversed.