Eugene Lloyd, Jr.

*v.*

State of Tennessee

440 S.W.2d 797.

(*Jackson,* April Term, 1969)

Opinion filed May 5, 1969.

(1)

2

John B. Getz, Assistant Public Defender, Memphis, for petitioner, respondent.

George F. McCanless, Attorney General, and Robert H. Roberts, Assistant Attorney General, Nashville, for the State. Phillip E. Kuhn, Assistant District Attorney General, prosecuted the case in the trial court.

Mr. Chief Justice Burnett delivered the opinion of the Court.

Lloyd was indicted on a three-count indictment. The State in the trial below relied upon Count No. 2 which alleged grand larceny. Under this count Lloyd was con-

victed and sentenced to the State penitentiary for not more than seven (7) years. The case was then appealed to the Court of Criminal Appeals which sustained one of the assignments of error hereinafter set forth and reversed the conviction and remanded for a new trial.

The State seasonably petitioned for certiorari, and likewise the defendant petitioned for certiorari as to the errors which were not considered by the Court of Criminal Appeals. After considering these petitions we granted the respective writs. The case was set down for argument, has been argued, briefed and, after considering the matter, we have the questions involved for disposition.

Factually a Mr. George Clark, who was employed by Motorola Company, testified on May 4 or 5, 1965, while in Memphis attending a Southeastern Hospital Show, he had stolen from his automobile a closed circuit television camera, lens and other equipment, along with some brief cases, a Polaroid camera and other items. His automobile was parked at the Shopper's Garage, and was parked there by an employee of the hotel where he was staying. When he got his car back he found that these items were missing and he estimated the value of the lens alone was from $625.00 to $650.00. A lens was shown him at the trial and he identified the camera lens as those stolen from his automobile.

The Memphis Police Department investigated this theft and among other things they found in Lloyd's possession a large sack of money orders in the trunk of his car. When two of the officers of the Memphis Police Department went to Lloyd's residence looking for these money orders they had no search warrant. They knocked

at the downstairs door but got no answer; then they went to an alley leading to upstairs rooms and called for the defendant, who told them to come-up. This was after they had informed him they were police officers. When they got to the top of the stairs and looked into an open door they saw a man later identified as Lloyd, who invited them into his room. The officers identified themselves and advised Lloyd of his constitutional rights and told him what they were looking for (the money orders) and then it was that Lloyd "handed the money orders over to them right then and there."

While these officers were in this man's room they saw lying on the floor near the bed what was later identified as the television camera lens. This lens was identified as that belonging to Mr. Clark and it was the taking and stealing of this for which he was convicted in this law suit. After they saw this lens and picked it up off the floor Lloyd said he didn't know what the lens was, and it was then that they took the lens back to the police station with them where they had complaints on file that this merchandise had been stolen. They, at the time they found this lens, did not know it was stolen and had been reported stolen. However, when they got back to the police station and checked with the property division, the lens was identified as part of the things that had been stolen from Mr. Clark, a hospital communications consultant. On the trial Clark positively identified the articles as having been stolen from his automobile on or about May 5, 1965. Lloyd, the defendant, claimed that he had found the lens on a playground near his home.

One of the Lieutenants of the Police Department of Memphis testified that he and another Lieutenant were together on this occasion; he testified that he advised

Lloyd of his rights; that he did not have to make any statement whatsoever. He could remain silent. He was entitled to an attorney and if he did not have the money to employ an attorney, then the court would furnish him one. If he said anything, it could be used against him as well as for him. Lloyd stated that he did not wish to make a statement; that he wanted to make a phone call, and he called his mother. His mother lived in a downstairs apartment in this same building. She did not take the witness stand in his law suit. The other police officer who was present likewise testified that Lloyd was advised as to his rights.

On the next day after this arrest (there is no question here about the arrest; he was taken to the police department on the money order theft; he has been convicted of that and is not now appealing) Lloyd was talked to again by one of these Police Lieutenants and was again advised of his rights. At that time Lloyd made an admission against interest. In other words he admitted he had stolen this lens. The Police Lieutenant stated that he then went even further in advising Lloyd as required by the *Miranda* decision. He says that Lloyd made this oral statement implicating himself in this theft. All of this oral testimony was had before the trial judge in the absence of the jury, and after hearing it the trial judge overruled the objection of counsel for Lloyd and admitted the statements saying, "that the officers advised Lloyd substantially within *Miranda.*"

There were two errors assigned in the Court of Appeals and that court reversed this case on the one which assigns it as error that the court erred in admitting over the objection of the defendant the oral statement that Lloyd made to the interrogating officer because it was

said that under the statement as made to Lloyd he was not properly advised of his right to counsel, either a private or a public defender, present and provided for him at the interrogation. This error was found by the Court of Appeals and the case reversed. The Court of Appeals found thus:

"The statement of Lieutenant Agee in regard to the advising the Defendant of his right to counsel at the interrogation is as follows: That 'he was entitled to an attorney, to call one, and if he didn't have the money to purchase an attorney of his own choice, then the Court would later furnish him one, or furnish him one as soon as he was charged, or any time that he so desired.' "

The court then quotes from *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 722, 723, what the Supreme Court of the United States held was necessary to warn an accused about his right to counsel, etc. The Court of Criminal Appeals then concluded that the statements above quoted as to how this man was advised by the Police Lieutenant do not fairly inform the defendant that he was entitled to counsel at the interrogation.

Questioning this decision the State has filed a petition for certiorari, as heretofore said, which we have granted. The defendant after having been advised as above quoted; that he did not have to make any statement at that time, said that he didn't want to make a statement and he didn't; that he wanted to make a phone call and he called his mother, and he then went to his mother's room for further talk. This was still in connection with the stolen money order charge. However, while in the defendant's room, the officers found the expensive camera

lens and asked the defendant about them, and his answer was apparently not satisfactory. After this man had gone to his mother's room and talked to her, he turned over the evidence in connection with the stolen money orders, and it was then, as said above, that he was taken to the police station on the money order charge. At that time no charge was made against him with regard to ·the larceny of the lens on which the present case is bottomed. It was after this that the officers found that the lens were reported stolen from Clark, and were found in this defendant's apartment. The next day the police officer testified that he again advised Lloyd of his rights and then the Lieutenant says, ''He was advised of his rights several times. At different intervals.''

During the interrogation on this second day about these lens the defendant's mother was with him, and it is testified in this record that during this interrogation the defendant made two phone calls, one of which was to his girl friend. He had every opportunity to consult with an attorney prior to the interrogation since he was questioned about the stolen lens on the first day and was not called back for interrogation concerning them until the next day, even though the officer took possession of them at the time. They first talked with him concerning the stolen money orders.

Lloyd denied during the evidentiary hearing, which the trial judge conducted in the absence of the jury, that he was explained his rights as stated by the police officer. His mother, who was present during this interrogation, did not testify for him. There was no explanation of why she did not in view of the fact that she was present when the interrogation took place on both days.

On cross-examination during this evidentiary hearing Lloyd admitted that he had been convicted of burglary in 1957, grand larceny in 1959, burglary in the third degree in 1966 and forgery in 1967, and that he knew anything he said could be used against him because of his past experience in the courts. Two of these convictions were after the *Miranda* decision. On cross-examination he admitted that he had been advised that he was entitled to a lawyer. This may be found in the transcript of the bill of exceptions on page 47.

 This man testified in his own behalf and denied that he made these incriminating statements attributed to him by the police officers, that is the ones he made concerning these expensive lens which had been stolen and of which he was convicted. It seems to us the only reasonable conclusion to reach in view of what has been detailed heretofore that his position is contradictory. He says at one time he never made the statements at all and then that he had not been advised of any constitutional rights he had; then he claims that he was deprived of these constitutional rights by not having been so advised. We think that unquestionably under the proof of this record that this man was advised according to every requirement of *Miranda,* supra.

Thus it is that we are satisfied that the Court of Criminal Appeals erred in their conclusion. This matter was before the Court of Criminal Appeals, an appellate court, with the presumption that the trial court had ruled correctly when they found that these statements made by this man were freely and voluntarily made, and in order to reverse the Court of Criminal Appeals would have had to have found that the evidence preponderated against such a finding, that is, that the defendant was not advised

of his constitutional rights as required by *Miranda* when the Court of Criminal Appeals holds contrary to the trial judge.

It seems to us, too, that the statement, or the portion of the statement, which is objected to as to the Police Lieutenant's remarks "or any time that he so desired" means exactly what it says, that is, that Lloyd could have an attorney anytime he so desired, and in view of his past experience over the ten years immediately before or thereabouts there is certainly no advantage at all being taken of this man.

▮ It has been held since *Cooper v. State*, 123 Tenn. 37, 138 S.W. 826, and on down to the present time, that when a jury verdict has been approved by the trial judge the presumption in favor of the innocence of the accused disappears and he comes before the appellate courts with a presumption of guilt. This was particularly applicable to the hearing that was held by the trial judge when he, after hearing the evidence pro and con, concluded that the man had voluntarily waived all the requirements of the *Miranda* case, and the only way the Court of Criminal Appeals could reverse this decision was to hold that the evidence preponderated against such a holding. We think unquestionably the evidence does not, but as a matter of fact supports the conclusions of the trial court.

The respondent to the State's petition for certiorari the defendant below, likewise filed a petition for certiorari here to the action of the Court of Criminal Appeals in pretermitting assignment Number 3 made in that court, and they argue very forcefully here that such assignment should now be sustained by us. This assignment is that:

"The Court erred in admitting in evidence the fruits of the search of the domicile of the defendant as said search related to the confiscation of a black leather case containing two television camera lenses. Said search was in fact conducted for the purposes of finding stolen money orders and a check protector."

We think that even though the officers originally went into the defendant's room at his request to search for the stolen money orders, it was their duty to look around and see what they could see with their naked eyes, without making a search, and by seeing what was just before them they saw these things which looked suspicious. In our judgment the officers when they were invited into this room as they were and looking for these stolen money orders and things of that kind, if they saw something else lying around which looked suspicious to them as having been stolen, it would be their duty to take it. It will be remembered that at that time the defendant said that he did not know what it was and that he found it on a playground close to where he lived and knew nothing about it at all. It was not until the next day after they had checked and found that this was stolen property that they brought him in and after being advised again as to his rights he made this admission which he is now objecting to. Clearly it seems to us that such evidence as was found when they were searching for these money orders, etc., was admissible. This case is somewhat factually and legally on a par with *Gerchman v. State,* 206 Tenn. 109, 332 S.W.2d 182, wherein this Court said:

"When it is within the knowledge of the officers making the search for specific things that other things have likewise been stolen and they in the course of their legitimate search see and run into these other things

clearly then it does not constitute an unreasonable search for the officers to report on the things found."

The defendant in error relied upon *Elliott et ux. v. State,* 173 Tenn. 203, 116 S.W.2d 1009, as its basic authority for why the evidence here objected to is not admissible. The *Elliott* case, as we see it, is in no wise in point. In this case a man was arrested for reckless driving, and then without any semblance of having liquor on his breath, or there being liquor about the car, the car was searched and illegal liquor found. This Court held that that was an unreasonable search. This is not that proposition at all, and the cases are clearly distinguishable.

The case of *Ellis v. State,* 211 Tenn. 321, 364 S.W.2d 925, is likewise relied upon as authority for this proposition here being discussed. We do not think though that the *Ellis* case is in point here either because this was not an illegal search but was something they saw in plain view after being invited into the room, and was something they should have reported and turned in. The *Ellis* case adopted for the first time in this State the rule of the Supreme Court of the United States set forth in *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and sets forth excellent legal propositions but in neither of those cases was a factual situation presented as in the instant case. In the instant case no illegal search was made or anything of the kind.

After having considered this error we think that the trial court was correct in admitting this evidence and think the Court of Criminal Appeals was wrong in reversing the matter on the application of the principles of the *Miranda* rule to the facts of this case. Consequently the judgment of the Court of Criminal Appeals is reversed and that of the trial court affirmed.