HAROLD LEONARD WHITE, Plaintiff in Error, v.
STATE OF TENNESSEE, Defendant in Error.

454 S.W.2d 159.

Court of Criminal Appeals of Tennessee. Nov. 26, 1969.

Certiorari Denied by Supreme Court April 20, 1970.

James F. Pryor, Richard L. Hollow, Legal Clinic, Knoxville, for plaintiff in error.

George F. McCanless, Atty. Gen., Lance D. Evans, Asst. Atty. Gen., Nashville, William E. Fitzgerald, Dist. Atty. Gen., Knoxville, William Zane Daniel, Asst. Dist. Atty. Gen., Powell, for defendant in error.

## OPINION

HYDER, Judge.

Harold Leonard White, the plaintiff in error, was convicted of murder in the second degree and sentenced to the penitentiary from ten to twenty years; and, under the second count of the same indictment, he was convicted of robbery by the use of a deadly weapon and sentenced to twenty years, with the sentences ordered to run concurrently. His appeal is properly before this Court.

Floyd Price, sixty seven years of age, on October 30, 1967, at about one o'clock in the afternoon, left his home in Knoxville to walk to the grocery store. Approximately one half of an hour later Ruth Byler observed Mr. Price in an alley behind her home. He was leaning up against her garage, she said, and he had blood and dirt on his face, and she saw what she described as blood on the ground near where he was standing. She found a pair of glasses and close to them was a blue glasses case. The glasses belonged to Mr. Price, but the glasses case did not. Mr. Price made his way into his home where his wife attended to his wounds and made immediate arrangements to admit him to the hospital. She said that when he came home his billfold was gone, and that he had about $40.00 in it. He could not tell her what had happened to him. The expert testimony showed that he died on November 23, 1967, from the injuries to his head. He had sustained a blow on the back of his head which fractured his skull and ruptured blood vessels in the brain.

The defendant was sixteen years of age in late 1967. On November 7, 1967, he was sent to the Training School at Pikeville, Tennessee, on a matter not related to this case. Investigation of this case led the Knoxville Police Department to the defendant; and, on December 27, 1967, two officers took what they referred to as a petition to the Training School and brought him from Pikeville to the Knoxville Police Department to be questioned. Within one hour after he arrived back at the Police Department in Knoxville the defendant had confessed that he and Charles Robinson, who died shortly after this crime, had robbed Mr. Price by hitting

him in the head with a brick. His confession was reduced to writing by the officers, and he signed it. It was allowed to be introduced in the trial of this case, and it is this confession and the admission of it into evidence which is assigned as error by defendant.

In his statement he said that the glasses case belonged to him, and the officers had him place his initials inside it.

The three assignments of error filed with this Court are:

## I

"The court erred in admitting the alleged confession because it was illegally obtained as the Appellant was not advised that he had a right to remain silent, nor did he waive this right."

## II

"The court erred in admitting the alleged confession because it was illegally obtained as the Appellant was not allowed to exercise his right to have counsel present during the interrogation."

## III

"'The court erred in admitting the alleged confession because it was illegally procured by detention and interrogation of the Appellant which did not conform with procedures applicable in the case of a juvenile accused of a crime and constituted a violation of the constitutional requirements of due process."

Thus, we are faced with the determination of the admissibility of defendant's confession. In brief the defendant says that his confession was illegally obtained;

that he was not advised that he had a right to remain silent and did not waive this right; that he was not allowed to exercise his right to have counsel present during his interrogation; and that his detention and interrogation violated his right to due process as a juvenile accused of a crime. The trial judge devoted approximately three hours to a consideration of the admissibility of the confession. In the absence of the jury he heard several witnesses for the State and for the defense. The defendant testified as did his mother, after which the court heard oral arguments of counsel. Certainly a full and complete hearing was held on the matter of the confession, the procedure followed in obtaining it, and the mental state of the defendant. Every detail bearing on its admissibility was explored.

The trial judge ruled, in considerable detail, that the confession was admissible. He found that the defendant was adequately advised of his constitutional rights and that there was an effective waiver of those rights. He found that the treatment accorded the defendant did not deny to him any of his rights and that as a juvenile he was afforded due process of the law. The trial judge ruled, adversely to the defendant, on all of the legal and constitutional propositions which are assigned as error in this Court.

Knoxville police officers Chadwell and Housewright went to the State Training School in Pikeville, on December 27, 1967, to return the defendant to Knoxville for questioning in this case. He was turned over to them at about one o'clock in the afternoon and they arrived back in Knoxville at about three o'clock. They both testified that they did not discuss this case with the de-

fendant during the automobile ride. The defendant was taken to Chief Waggoner's office and questioning of him began approximately fifteen minutes after their arrival at the station. Within twenty minutes, according to their testimony, the defendant had made his confession, and it was reduced to writing and signed by him shortly thereafter.

The officers testified that the defendant was advised fully of his constitutional rights and that they offered to have his parents there. A police car was dispatched to go by his home and advise his mother that he was being held for questioning at the police station, but she was not contacted until after he made the confession. The record is not clear just when the car went to her home.

The officers testified that the inculpatory statement was read to the defendant, that he read it and signed it. They also said that he placed his initials on the first page where a change was made, striking out the word pocketbook and inserting instead the word cigarettes.

Defendant testified in his own behalf. He said that the officers told him in Pikeville, and all during the trip to Knoxville, that they wanted him to tell the truth about a robbery; but that he did not know anything about it. He denied admitting that he had committed the crime but he did say that he signed the statement because the officers promised that if he did they would permit him to see his mother. The defendant said that the police officers told him that he could call a lawyer and that he asked them if he could call his mother. They told him, he said, that they would call her for him. He said that the officers did not use force on him nor did they threaten him, but

that they asked him all kinds of funny questions. He denied that the blue glasses case found at the scene of the crime belonged to him, but he admitted to having placed his initials inside it during the period of interrogation by the officers. He said that was done so that he could see his mother.

While the defendant testified that the officers failed to advise him properly and adequately as to his legal and constitutional rights before he was questioned, he denied that he confessed to this crime. He said that "I didn't tell them nothing."

██ This case is before this Court on appeal under the presumption that the trial court ruled correctly when it was determined that the defendant was properly advised of his legal and constitutional rights, that he waived those rights, that he freely and voluntarily made a statement against interest, and that as a juvenile he was afforded due process of the law. Unless we find that the evidence preponderates against such a finding we must affirm it. Lloyd v. State, Tenn., 440 S.W.2d 797.

██ We do not believe that the defendant has shown that the evidence preponderated against the finding of the trial judge. The police officers testified what they said to the defendant in advising him of his rights and his response. They said that he freely confessed saying he wanted to tell the truth. They said that the confession was reduced to writing and that the defendant signed it within an hour after the questioning began. The de-defendant's version is contrary to common sense and reason. He says he was not advised of his rights and further says he did not tell the officers anything. If his statements are true all of the police officers who testified

committed perjury; and we do not believe that the defendant has shown that they did.

The defendant was brought to Knoxville for questioning, and we do not believe that the fact that he was taken to the police department, instead of to the juvenile court, was harmful or prejudicial to his case. It was pointed out in the defendant's brief that he was in fact taken before the Knox County Juvenile Court on January 9, 1968, and that he was remanded to the Sheriff of Knox County on charges of murder in the first degree and robbery by the use of a deadly weapon. We find that statutory provisions in such cases were complied with. T.C.A. Title 37, Chapter 2.

■ In reviewing this record we conclude that the defendant can not be convicted of both of the offenses: murder in the second degree and robbery by the use of a deadly weapon. While the assignments of error do not complain of the two convictions and two sentences, we are of the opinion that it is our duty to correct error and render such judgment on the record as the law demands. T.C.A. § 40-3409.

■ We find that these offenses were committed at the same time and are parts of a single continuing criminal act, inspired by the same criminal intent which is essential to each offense, and that they are susceptible to but one punishment. Patmore v. State, 152 Tenn. 281, 277 S.W.892. It is, then, in our opinion, the duty of this Court to determine the higher offense, or the higher grade of offense, and to allow the judgment and sentence for that offense to stand and to strike the judgment and sentence for the lower or lesser offense.

■ ■ We determine that the grade of offense is judged by the punishment; as in the instant case the higher offense is robbery by the use of a deadly weapon. The punishment fixed by the jury for that crime was twenty years, and that was the judgment of the trial court, under the second count of the indictment.

We affirm the judgment and sentence of twenty years in the penitentiary for the offense of robbery by the use of a deadly weapon.

The sentence and judgment of ten years to twenty years in the penitentiary for the offense of murder in the second degree, under the first count of the indictment, is reversed, and this charge is dismissed.

We express appreciation to counsel appointed in this case for their outstanding service in representing the defendant, and we appreciate the well prepared brief.

WALKER, P. J., and MITCHELL, J., concur.