Maurice McKinney TAYLOR,
Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 8, 1976.

Certiorari Denied by Supreme Court Aug. 16, 1976.

Certiorari Denied by U. S. Supreme Court April 18, 1977.

Robert T. McGowan, Asst. Public Defender, Nashville, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Aaron Wyckoff, and John E. Rodgers, Asst. Dist. Attys. Gen., Nashville, for defendant in error.

## OPINION

O'BRIEN, Judge.

Defendant was convicted on a two count indictment charging him with murder in the first degree in the deaths of James P. Widener and Mildred L. Hazelwood. He was sentenced to life imprisonment.

Defendant first says the trial court erred in allowing a medical examiner to give his opinion as to whether or not a bullet in one of the bodies had not only separated, but to also express an opinion that this bullet was designed to separate.

The transcript of the record and defense brief in this case do not comply with the rules of this court in that there has been no attempt to abridge the record (Rule 1); nor any effort made to omit from the Bill of Exceptions immaterial or uncontroverted matter which does not bear on the grounds assigned in the trial court for new trial, (Rule 2); nor does the brief make reference to the pages of the record where the errors complained of appear, (Rule 14). Nevertheless, despite these discrepancies we have examined this voluminous record carefully to determine if there was error in the trial proceedings.

The error first complained of by defendant did not actually occur. The medical examiner's qualifications as an expert were stipulated. In addition to the stipulations he testified he had been County Medical Examiner for approximately eight (8) years and in that capacity examined approximately fifty gunshot wounds annually. An attempt was made by State's counsel to elicit an opinion from the doctor to the effect that certain types of bullets would explode on impact. Although it is not so stated in the record, it is evident that the district attorney intended to relate this type bullet to those missiles extracted from the bodies of the victims. Defense counsel properly objected, and questioning in this vein was disallowed by the trial Judge. The doctor was allowed to testify that a projectile which had entered the brain of one of the victims had separated and was removed in two pieces. Also, that he removed part of a projectile from a head wound in the other victim. A hypothetical

question was posed by the district attorney regarding the effect on the human body if a bullet exploded upon impact. Objection to this line of questioning was sustained. The doctor was allowed to testify about the effect upon a human body where a bullet separates upon impact. In light of the examination of the bodies of the victims by the doctor which disclosed that the death missiles had in fact separated upon impact, we do not find any abuse of the trial judge's discretion in allowing this testimony. We think the doctor was fully qualified to testify as he did on the basis of his experience as County Medical Examiner. Had the admission of this testimony been error, it could be no more than harmless error in view of the fact that a fire arms examiner for the Tennessee Bureau of Criminal Identification subsequently testified that the projectiles taken from the bodies of the victims had been fired from a weapon taken from defendant at the time of his arrest. That these bullets were jacketed hollow points, the primary design and function of which was to cause the nose of the bullet to explode, expand, or mushroom upon impact.

By the second assignment it is urged that the trial court erred in qualifying a police officer as a fingerprint expert and allowing him to give expert testimony concerning fingerprints.

■■■ Testimony of Metro Police Officer Jimmy Rogers was offered for the purpose of making a comparison between a latent fingerprint found in a motel room occupied by one of the homicide victims and an identified fingerprint of the defendant. In a lengthy out-of-jury hearing the trial Judge determined that the witness was qualified as an expert to testify in the area in which his testimony was offered. It appears he was a graduate of an F.B.I. Improved Correspondence Course, had some three years experience and training under the supervision of an expert in the field, and had himself testified as an expert approximately ten times prior to the trial. His testimony regarding his area of expertise was subjected to rigid cross-examination. The

qualification of an expert witness is a matter within the sound discretion of the trial court, and his decision in such matters will not be reversed on appeal, absent a clear abuse of discretion. *Fortune v. State*, 197 Tenn. 691, 277 S.W.2d 381; *Murray v. State*, 214 Tenn. 51, 377 S.W.2d 918. We find no reason to disturb the trial court's ruling on this issue.

Defendant complains that the trial court erred in allowing in evidence the fruits of a search conducted by the Memphis Police Department in a motel room, without the benefit of a search warrant.

Several days after the homicides the defendant was apprehended in Memphis, Tennessee in the company of Richard Benjamin Dunn and Philip Glenn Mason, who were co-defendants prior to submission of guilty pleas to the lesser offense of accessories after the fact to murder. These three were arrested at the Cayce Motel in that city. They had endeavored to use credit cards owned by the deceased, James P. Widener, and had abandoned his automobile in which they had travelled to Memphis, after hearing news reports that a state-wide search was being conducted for them. Dunn and Mason were apprehended outside of the motel room occupied by defendant, a shoot-out occurred resulting in defendant's ultimate surrender. When defendant emerged from the motel room he was carrying a large red suitcase. He dropped a pistol inside the door which proved to be the murder weapon. Officers entered the motel room to determine if there was anyone else present, and for the further purpose of securing evidence in the room. The pistol was lying in a chair immediately inside the front door. At that time all three defendants were in custody and in the process of being transported to the Memphis Police Station. A thorough search of the motel room was made. A coin purse containing a diamond ring and a wrist watch was discovered under the mattress of one of the beds. These items were the property of the victim, Mildred Hazelwood. There were two suitcases in the room in addition to the one deposited by this defendant on the front porch. The

keys to the car owned by the victim, James Widener, were found in one of the suitcases. Objection was made to the admission of this evidence because the police had not obtained a search warrant. After an out-of-jury hearing the trial Judge ruled that the evidence was admissible. He stated the basis for his reasoning to be that when police flush suspects in a murder case out of a house they have got to go in and see what they can find which might lead them to the murder. He reasoned that the defendants had lost the care, custody and control of the room upon their arrest, and if the room had been sealed and a search warrant obtained there would have been no defendant present to serve a warrant on. That any warrant obtained had to be served on the operators of the motel, therefor, defendant had no standing to object to the search without a warrant. That the police had a duty to protect the defendant's property and the search made was in the nature of an inventory search.

Defendant cites only State law to sustain this assignment, but does seem to suggest that he relies on a violation of his rights under the Federal Constitution as well. We shall examine the question from both views since we have reached the conclusion that his honor the trial Judge did err in allowing the admission of the evidence complained of.

Without reiterating the reasons set forth by the trial Judge for the admission of the evidence, it is sufficient to say that the Tennessee Constitutional provisions against unreasonable searches and seizures are identical in intent and purpose with the 4th Amendment of the United States Constitution. (Constitution of Tennessee, Art. 1, Sec. 7) (U.S. Constitution, Amend. 4); *Sneed v. State*, 221 Tenn. 6, 423 S.W.2d 857; *Ellis v. State*, 211 Tenn. 321, 364 S.W.2d 925. The guidelines delineating the limits beyond which a warrantless search may not proceed are set out in *Chimel v. Calif.*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685, which holds in summary that police officers must, whenever practical, obtain advance judicial approval of searches

and seizures through warrant procedures; that an arrest does not justify a routine search through closed or concealed areas in a room where the arrest occurs; that a search, under circumstances such as those existing in this case, may not extend beyond the search of the person arrested and the area in his reach, if the search is to retain the distinction of being classified as reasonable. There was no justification, under the facts of this case, for the search into the suitcases, and between the mattresses on the bed by the Memphis police officers. The five basic exceptions to the requirement for a search warrant are (1) consent, (2) incident to a lawful arrest, (3) probable cause to search with exigent circumstances, (4) in hot pursuit, (5) a stop and frisk situation. None of these elements were present in this case. We can only view the search as illegal and improper.

It does not necessarily result however that the failure of the police officers to comply with the constitutional restrictions regarding searches and seizures requires an automatic reversal in this case. The harmless error statute in this State provides, in pertinent part, that no verdict or judgment shall be set aside or new trial granted on account of the improper admission or rejection of evidence unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial, (T.C.A. Sec. 27–117). The Federal criteria demands only that there be a reasonable possibility that the evidence complained of might have contributed to the conviction. *Fahy v. Conn.*, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. It is plain that the trial Judge's error in admitting the evidence obtained in the unlawful search of the Memphis motel room did not violate either standard. The jewelry and coin purse found between the mattresses on the bed and the car keys found in the suitcase did no more to incriminate defendant than it did the other occupants of the room. As a matter of fact the evidence admitted tended to exculpate more than implicate him. While it is true defendant

was one of three occupants of the motel room he did not establish any proprietary interest in the bed where the jewelry and coin purse were found. If the evidence is to be accepted as it appeared in the record the car keys were found in the suitcase which was the property of Richard Benjamin Dunn, and it was Mason who drove the automobile from Nashville to Memphis. On the other hand, defendant's thumbprint was found in the motel room occupied by the victim, Hazelwood. He was observed in an adjacent restaurant at the same time the victims were present there, only a few minutes before the homicides occurred. The death weapon was found in his possession. According to his co-defendants it was he who brought Mr. Widener's automobile to the Driver Motel where they were staying in Nashville. It was he who insisted they leave Nashville, and he who produced the credit cards belonging to the victim Widener, after they arrived in Memphis.

Finally, defendant says it was error to limit his right of cross-examination, and confrontation of State witnesses, Richard Benjamin Dunn and Phillip Glen Mason.

These witnesses were his co-defendants against whom the charges of 1st degree murder were stricken.

Defendants brief correctly states the law to be that he has the right to cross-examine a witness who has testified to material matters so long as his cross-examination is relevant to a material issue in the law suit. *Monts v. State*, 214 Tenn. 171, 379 S.W.2d 34; *Davis v. State*, 186 Tenn. 545, 212 S.W.2d 374. We have examined this record carefully and find that both of these witnesses were cross-examined extensively, and that the cross-examination covered every relevant facet of their participation and knowledge of the circumstances surrounding the charge against defendant. Both of these witnesses were represented by counsel at trial who advised them when it would be appropriate for them to assert their rights under the 5th Amendment of the United States Constitution to avoid incriminating themselves in regard to other criminal matters in which they were involved. Except for a few limited instances the witnesses were required to respond to the cross-examination under the threat of contempt charges. Those times when the 5th Amendment was pleaded and sustained generally involved matters which were not material, and had no relevance to the issue at hand, that is the guilt or the innocence of this defendant. The only benefit to the defendant which might have been attained by requiring answers to those questions would have been to attack the credibility of the witnesses. This was otherwise successfully accomplished and any additional benefit which might have been attained by cross-examination certainly did not outweigh the right of these witnesses to avoid incriminating themselves in reference to other charges pending against them.

The judgment of the trial court is affirmed.

RUSSELL and HARWELL, JJ., concur.