STATE of Tennessee, Appellee,

v.

**Thomas Earl CROSCUP, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

May 8, 1980.

Permission to Appeal Denied by Supreme Court July 28, 1980.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Michael W. Whitaker, Dist. Atty. Gen., Jon Kerry Blackwood, Preston Parks, Asst. Dist. Attys. Gen., Somerville, for appellee.

Robert C. Wilder, Ripley, for appellant.

## OPINION

WALKER, Presiding Judge.

Convicted in Lauderdale County of first degree murder of Calvin Brewer and sentenced to life imprisonment, Thomas Earl Croscup appeals to this court, contending that the court erred in refusing to suppress his statements and confession, that telephone conversations with an officer were improperly admitted, that the evidence preponderates against the jury's finding of sanity and that the jury was improperly instructed on the issue of insanity. We find no reversible error and affirm.

On August 28, 1978, Calvin Brewer and the appellant visited several Lauderdale County taverns and drank beer together after which they went to the appellant's home. At about 2:00 p. m., they left there with the appellant driving Brewer's car. After that time Brewer was cut and stabbed at least 27 times, his throat cut, a

belt tied tightly around his neck and he was thrown into a pond. The cause of death was drowning. His body was not found until the next day.

On the evening of August 28, Halls Police Officer Jimmy Garrett received three anonymous phone calls saying that the caller had killed a man and thrown the body into a pond. The caller said that he and the victim had been drinking, that the victim made sexual advances and that he had stabbed the victim. He wanted the officer to go to the location he described, find the body, have that reported on a television or radio station, after which the caller would come to Garrett's home and surrender.

After 5:00 p. m., the appellant was at the Lauderdale County Hospital still driving Brewer's car. His trousers were bloody. On leaving the hospital he sideswiped a car after which Sheriff Osteen and officers went to his home to arrest him.

When the officers arrived, the appellant drove Brewer's car around the house, jumped out and ran through a field. When he saw his wife talking to the sheriff, however, he returned shouting, "Don't take my wife. She didn't have anything to do with it. I killed the son–of–a–bitch and he deserved to be killed." The sheriff arrested him and gave him *Miranda* warnings at which time he said Officer Garrett was the only one to whom he would talk. He had Brewer's watch on his arm at the time of his arrest, and Brewer's billfold was in the car.

When he learned Officer Garrett's identity, the appellant asked, "What did you screw me around for?" That night he went with Garrett and other officers in an effort to show them the body, but they were unsuccessful. He told Garrett that he (Croscup) would not go back to search the next day unless Garrett went, too. That day Garrett and other officers went with him again, and he pointed out the pond and body, located Brewer's glasses and searched for his own knife.

After full *Miranda* warnings by TBI Agent Robert Yoakum, the appellant refused to sign a waiver but confessed to killing Brewer, giving details of the crime. He said Brewer was driving the car, stopped and made sexual advances; that they argued, fought and he stabbed Brewer, cut his throat and threw him in the pond. He said he told his wife that he had killed a man.

■ We think the evidence amply supports the trial judge's determination that these statements were admissible. The trial judge's findings will be given the weight of a jury verdict. *Taylor v. State*, 180 Tenn. 62, 171 S.W.2d 403 (1943); *Lloyd v. State*, 223 Tenn. 1, 440 S.W.2d 797 (1969).

■ The appellant argues that he was intoxicated when he made the statements on the day of his arrest, and also that he suffered from a mental disease known as pathological intoxication, and for those reasons his statements and confessions were inadmissible. The appellant's remarks at his home were spontaneous, and he was not being interrogated or solicited to make a statement in any way. Although he had been drinking, this does not necessarily render his statement inadmissible. *Pyburn v. State*, 539 S.W.2d 835 (Tenn.Cr.App.1976). Spontaneous statements against the interest of an accused are not subject to the exclusionary rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor does the evidence show that the statements were inadmissible because of the appellant's mental condition.

After his arrest the appellant was properly warned by Sheriff Osteen and Agent Yoakum. While he declined to sign a waiver or a statement, it is clear that he freely and voluntarily confessed to the crime. Nothing indicates that his will was overborne in any way. He told Agent Yoakum exactly how and where the murder occurred.

■ Likewise, Officer Garrett's testimony was admissible. The appellant refused to talk to anyone except Garrett and when he learned Garrett's identity he asked why Garrett "screwed him around." His conduct indicated that he was the caller.

The appellant contends in substance that the evidence does not support the verdict because it was insufficient to demonstrate his sanity at the time of the offense.

The appellant based his insanity defense on records from Massachusetts showing that he had been confined to mental hospitals there from age seven until he escaped at 19, and by expert testimony from Dr. David Knott of Memphis and Dr. Walter M. Presnell of Lynn, Massachusetts.

After an examination at the Covington Mental Health Center, Dr. Knott recommended further evaluation and Croscup was sent to Middle Tennessee Mental Health Institute for a 30–day evaluation. Dr. Samuel Pieper, Jr., Staff Psychiatrist at the Forensic Services Division of that institution, testified as to the studies by himself and the staff there. He was of the opinion that Croscup had no organic brain damage and that he was able to appreciate the wrongfulness of his acts, and that he was able to conform to the requirements of the law. In his view the appellant was legally sane.

Dr. Presnell examined Croscup in May 1975 and last saw him July 12, 1976. His deposition supports the appellant's contention that he suffers from a mental illness known as pathological intoxication. He had no opinion on his sanity at the time of the crime.

Lay testimony was to the effect that the appellant showed no indications of insanity. ■ Although the state has the burden of proving a defendant's sanity beyond a reasonable doubt, once the defendant has introduced competent evidence tending to rebut the presumption of sanity, the issue of insanity remains a factual question for the jury to determine in light of all the evidence in the case. *Sampson v. State*, 553 S.W.2d 345 (Tenn.1977); *Pyburn v. State*, supra; *Graham v. State*, 547 S.W.2d 531 (Tenn.1977); *State v. Patton*, 593 S.W.2d 913 (Tenn.1979). The appellant's words and acts at or near the time of the offense may be considered by the jury. *Mullendore v. State*, 183 Tenn. 53, 191 S.W.2d 149 (1945). Although the appellant had difficulty in adjusting when he drank alcohol, his mental condition falls short of the requirement that "the defendant must lack substantial capacity either to appreciate the wrongfulness of his conduct or to conform to the requirements of the law." *Graham v. State*, supra.

There was ample evidence to support the jury's conclusion that Croscup was sane at the time the offenses occurred.

■ The trial judge instructed the jury in accordance with the essential requirements of *Graham v. State*, supra, and with Tennessee Pattern Jury Instructions–Crim. 36.06. He complains because the court declined to charge his special requests on the defense of "diminished capacity." Although he concedes that these requests do not reflect present Tennessee law, he requests that we adopt that doctrine. This we decline to do. The instructions, as a whole, were fair and correct.

All issues are overruled and the judgment is affirmed.

TATUM and BYERS, JJ., concur.